NOVEMBER TERM, 1874.                    407

The State Board of Agriculture *v.* The Citizens Street R. W. Co.

THE STATE BOARD OF AGRICULTURE *v.* THE CITIZENS STREET
RAILWAY CO.

CORPORATION.—*Contract.*—*Ultra Vires.*—It is the general doctrine that corporations possess the powers expressly conferred by law, and such implied powers as are necessary to enable them to exercise the powers expressly granted, and no others; yet, although there may be a defect of power in a corporation to make a contract, if a contract made by it is not in violation of the charter of the corporation, or of any statute prohibiting it, and the corporation has by its promise induced a party, relying upon such promise and in execution of the contract, to expend money and perform his part of the contract, the corporation is liable on the contract.

From the Marion Common Pleas.

*S. E. Perkins*, *O. F. Baker*, and *S. E. Perkins, Jr.*, for appellant.

*T. A. Hendricks*, *O. B. Hord*, and *A. W. Hendricks*, for appellee.

DOWNEY, J.—The question presented for our consideration and decision in this case is whether the complaint, to which a demurrer was sustained in the court below, is sufficient or not. The action was commenced November 21st, 1868.

The complaint alleges that the Citizens Street Railway Company was, and is, a corporation, owning and running a street railway in the city of Indianapolis, Indiana, and to Crown Hill, etc.; that two of the streets on which cars are run extend to near the north boundary of the city, and one of the routes three miles beyond and near the grounds set apart for the holding of state fairs by the said State Board of Agriculture, a corporation having its principal office in Indianapolis; that the holding of said fairs is a source of great profit to the said street railway company, to wit, to the amount of six thousand dollars at each fair, etc.; that, for the purpose of increasing the profits of said street railway company, and to further its interests, the said company desired to procure the said State Board of Agriculture to hold state fairs upon the ground near the northern boundary

of the said city, although it would occasion expense to the said Board of Agriculture; and for that purpose the said company, with the approval of the stockholders, in March, 1868, entered into an agreement with the plaintiffs, in writing, etc., as follows :

" As an inducement to the Indiana State Board of Agriculture to locate the Annual State Fair upon the State Board of Agriculture's fair ground, north of the city of Indianapolis (Camp Morton) for each of the years 1868, 1869, 1870, each of the undersigned hereby agrees to pay to the said State Board of Agriculture the amount set opposite his name, to be paid in three equal annual payments, on the 1st day of September, 1868, 1869, 1870, each of the subscribers to be responsible to the amount of his own subscription, but no further ; and subscriptions are upon the express condition that the State fairs shall be located and held for the three years above stated. Said amounts to be paid without benefit from valuation laws.

" March 18th, 1868."

Signed : " Citizens Street Railway Company, one thousand dollars."

The said plaintiff, not doubting the power of said railway company to make said subscription and contract, has performed all the conditions in said contract to be performed by her up to this time, and on the faith of said subscription by said company and others, expended twenty thousand dollars in fitting up said grounds. Yet the defendant has not paid, but wholly refuses to pay, her one-third of one thousand dollars due September 1st, 1868, by the terms of said agreement, although demanded, etc., to the plaintiff's damage six hundred dollars ; wherefore, etc.

There are three acts relating to street railways. The act of June 4th, 1861, Acts Special Session 1861, p. 75, the act of March 6th, 1865, Acts 1865, p. 63, and the act of February 28th, 1867, Acts 1867, p. 162.

To these acts we must look to ascertain the extent of the powers and capacities of the appellee.

· The first section of the act of June 4th, 1861, authorizes the formation of a corporation of this character, "for the purpose of constructing, owning, and maintaining street or horse railroads, switches, or side tracks, upon and through the streets of the cities or towns within the State."

The third section provides :

"The said company shall be capable of purchasing, holding, and conveying any real or personal property whatever necessary for the construction and equipment of the road, switches, and side tracks, and for the erection of all necessary buildings and yards, and may buy, own, and sell any kind of property that may be necessary to properly conduct or carry on the business of such road."

Section 6 of the same act authorizes the company to "borrow such sums of money as may be necessary for completing or operating their railroad," and authorizes the corporation to raise the money by issuing bonds secured by a mortgage of its corporate property and franchises.

The act of March 6th, 1865, authorizes such companies to extend their roads beyond town and city limits, and authorizes them to use public highways, upon the conditions and subject to the regulations therein prescribed.

The act of February 28th, 1867, authorizes such companies to raise funds to discharge the indebtedness of such companies, by making a *pro rata* assessment against stockholders, and to make needful rules in relation thereto, etc.

The objection to the complaint urged by counsel for the appellee is, that the contract on which the action is founded is void for the want of power in the street railway company to make the same.

The modern doctrine is to regard corporations as possessing the powers expressly conferred upon them by law, and such implied powers as are necessary to enable them to exercise the powers expressly granted, and no others.

The state fair has generally been held at Indianapolis, though not always. The State Board of Agriculture owned the ground on which the fair was afterward located under

the contract in question. If that place was made the loca-
tion for the fairs, it was so near to the city that the street
railway company, by making a short additional line of road,
could connect the fair ground with its whole system of roads
in the city, could obtain the carrying of passengers from all
parts of the city into which its road extended, convey
them to the fairs, and return them to the city again, thus
making the arrangement one of great profit to the company.

Counsel say: "There is nothing in the charter of the
appellee that warrants the assumption that it is authorized to
embark in the enterprise, however praiseworthy it may be,
of developing the agricultural and mechanical interests of
the State, by aiding in establishing and maintaining state
and county fairs, or any of the other plans that may be sug-
gested by the ingenious and public spirited. It will be diffi-
cult to imagine anything more foreign to the objects for
which the appellee was incorporated, than the exhibition of
live stock, agricultural productions, and mechanical imple-
ments, and the giving of premiums to successful competi-
tors for excellence."

We hardly think the motive with the street railway com-
pany was the development of the agricultural and mechani-
cal interests of the State, so much as it was to build up,
increase, and make more profitable the business in which it
was engaged. That this latter was the object which it had
in view, we think, is quite clear.

Counsel for the appellant submit:

That the contract on which the action is predicated is
within the incidental powers of the corporation; that it has
the power to make all contracts that are necessary and usual
as means to carry out the objects of its creation, unless pro-
hibited by law; that with this limitation it may deal precisely
as if it were a natural person, to promote its legitimate
objects. It is urged that it is usual for railroad companies to
aid in establishing picnic and camp-meeting grounds, etc.,
on their lines, as means of increasing the business of their
roads, and making money for the company; and, that a

The State Board of Agriculture *v.* The Citizens Street R. W. Co.

corporation is estopped to plead *ultra vires* when money has been invested on the faith of its contract.

Without deciding the law of the first position assumed by counsel for the appellant, we have examined more particularly the law with reference to the second.

A distinction may, perhaps, be well made between the case where an act of a corporation is done in violation of an express prohibition in its charter, or in some other law relating thereto, and the case where there is simply a defect of power in the corporation to do the act. So it appears that there are acts of corporations which strictly are *ultra vires*, and for the doing of which the State may proceed against the corporation, and yet the acts of the corporation, under the particular circumstances, be binding upon the corporation.

There appears also to be a distinction between the rights of the parties to a contract which remains wholly executory, and the rights of parties to a contract when it has been wholly executed by the party dealing with the corporation.

In Angell & Ames Corp. 240, note *a*, 9th ed., it is said:

" The courts of New York have gone very far in enforcing contracts made by corporations, although they are not justified by their charters; and the law in that State now appears to be that such a contract, which is purely executory on both sides, and where no wrong will be done if the parties are left in their previous situation, should not be enforced, but that the executed dealings of corporations must be allowed to stand for and against both parties, when the plainest rules of good faith so require. *Parish* v. *Wheeler*, 22 N. Y. 494; *Bissell* v. *The Michigan, etc., R. R. Co.*, 22 N. Y. 258; *De Groff* v. *Amer. L. Thread Co.*, 21 N. Y. 124."

In Sedgw. Stat. & Const. Law, 73, 2d ed., it is said:

" It must be further borne in mind, that the invalidity of contracts made in violation of statutes, is subject to the equitable exception that, although a corporation, in making a contract, acts in disagreement with its charter, where it is a simple question of capacity or authority to contract, arising

either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement can not be permitted, in an action founded on it, to question its validity. It would be in the highest degree inequitable and unjust, to permit the defendant to repudiate a contract the fruits of which he retains. And the principle of this exception has been extended to other cases. So, a person who has borrowed money of a savings institution upon his promissory note, secured by a pledge of bank-stock, is not entitled to an injunction to prevent the prosecution of the note, upon the ground that the savings bank was prohibited by its charter from making loans of that description."

In *Township of Pine Grove* v. *Talcott,* 19 Wal. 666, this statement of the law is copied into his opinion by SWAYNE, J., and, although the case was decided upon another point, it was stated by the learned judge, that "the authorities referred to sustain the text."

*The Steam Navigation Company* v. *Weed,* 17 Barb. 378, was an action to recover money loaned, and the defence was, that the corporation had no power to loan the money, and it was held that the defendant was not at liberty to avail himself of the defence. The court drew a distinction between the violation of an express statute, and the mere want of power to make the contract. The doctrine was stated as laid down by Mr. Sedgwick above. The learned judge, after examining a number of authorities, concludes his opinion as follows:

"I am happy to come to the conclusion that the law will not sustain this most unconscionable defence. It ill becomes the defendants to borrow from the plaintiff one thousand dollars for a single day, to relieve their immediate necessities, and then to turn around and say, 'I will not return you this money, because you had no power, by your charter, to lend it.' Let them first restore the money, and then it will be time enough for them to discuss with the sovereign power of the State of Connecticut the extent of the plaintiff's chartered privileges. We shall lose our respect for the law,

when it so far loses its character for justice as to sanction the defence here attempted."

The following cases are cited and examined in the opinion, and relied upon in support of the ruling: *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; *The State of Indiana* v. *Woram,* 6 Hill N. Y. 33; *The Chester Glass Co.* v. *Dewey,* 16 Mass. 94; *Steam Boat Co.* v. *McCutcheon,* 13 Penn. St. 13; *Palmer* v. *Lawrence,* 3 Sandf. 161; *Potter* v. *The Bank of Ithaca,* 5 Hill N. Y. 490; *Suydam* v. *The Morris Canal and Banking Co.,* 5 Hill N. Y. 491, note *a; The Sacket's Harbor Bank* v. *The Lewis County Bank,* 11 Barb. 213.

We refer, in support of the rule, to the following additional authorities, which we have examined: *Mott* v. *The U. S. Trust Co.,* 19 Barb. 568; *Bank* v. *Hammond,* 1 Rich. 281; *Southern, etc., Co.* v. *Lanier,* 5 Fla. 110; *The San Francisco Gas Co.* v. *The City of San Francisco,* 9 Cal. 453; *Argenti* v. *City of San Francisco,* 16 Cal. 255; *Little* v. *O'Brien,* 9 Mass. 403.

It is not claimed in the case under consideration that there was any statute by which the street railway company was prohibited from entering into the contract in question, or in other words, that in making the contract that company violated any statute by which the act was prohibited. All that is claimed is, that there was a want of power on the part of the corporation to bind itself by the contract. It is fully shown on the part of the plaintiff, that the State Board of Agriculture performed the contract on its part. The street railway company has thus received the benefits and advantages of the contract, but seeks to avoid paying the consideration promised, because it had not the legal power to contract for the benefits which it has actually received. In our opinion, the street railway company is not at liberty to assume this position. It has received the profits resulting from the compliance of the plaintiff with the contract. These profits, we are at liberty to presume, have gone to swell the dividends of the stockholders in that corporation. It would be unjust for their company now to escape performance of the contract by which these profits have been real-

ized. We have not examined to see what the present state of the law is on this subject in the English courts. We have considered the case without reference to the allegation in the complaint that the contract was made with the assent of the stockholders of the street railway company. If the street railway company has incurred a forfeiture of its char-tered rights by the act done, that is a question for it to set-tle with the State.

No question is discussed or decided relating to the validity of the contract, except so far as relates to the power of the street railway company to bind itself thereby, under the cir-cumstances.

The judgment is reversed, with costs, and the cause remanded, for further proceedings.

BUSKIRK, C. J., dissents.