## THE COLUMBUS WATER-WORKS COMPANY v. THE CITY OF COLUMBUS *et al.*

MANDAMUS — *Passage of Ordinance — Correction of Minutes — Levy of Taxes.* In an action of *mandamus*, brought by a water-works company against a city of the second class and its officers and others, to compel the levy and collection of a tax to pay rent for hydrants, contracted for by the city under an ordinance, it appears that the minutes of the passage of the ordinance, as entered upon the journal, do not show that the ordinance was regularly passed, but the evidence outside of the journal shows that the ordinance was in fact regularly passed and approved and attested and published; and it appears to be valid upon its face, and was accepted and acted upon as valid by all parties, and the city at two different times passed two other ordinances relating to the water-works, and purporting to be amendments to the aforesaid original ordinance; and under these ordinances the water-works were constructed to the satisfaction of the city, and the city afterward accepted the hydrants and their use, and levied taxes for three years to pay for their use, and paid the rent therefor for two and a half years, and then refused to further levy taxes or to pay rent for the use of the hydrants. *Held,* That a writ of *mandamus* may be allowed and issued requiring that the minutes of the passage of the said original ordinance shall be so corrected by an entry *nunc pro tunc* as to make them show that the ordinance was regularly passed, and that the mayor and council shall then levy taxes and perform all the other duties which may be incumbent upon them under the provisions of the ordinance as a valid ordinance.

### Original Proceeding in Mandamus.

THE material facts are stated in the opinion, filed at the session of the court in June, 1891.

*John N. Ritter,* and *Rossington, Smith & Dallas,* for plaintiff.

*J. D. McCleverty,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of *mandamus*, brought originally in this court by the Columbus Water-works Company against the city of Columbus and its officers and others,

to compel the defendants to levy and collect certain taxes, especially a tax sufficient to raise the sum of $3,000, with which to pay for the use of 50 hydrants for the year 1891. The facts supposed to be involved in the decision of this controversy have been largely agreed upon by the parties, and evidence has also been introduced. It is admitted by the parties that from a time prior to March 23, 1887, up to the present time, the city of Columbus has been a city of the second class; and it is claimed by the plaintiff that on that day an ordinance was duly passed by the city council, and approved by the mayor, and afterward published, granting to R. A. Long and L. L. Doubleday, and their heirs and assigns, the exclusive right and privilege to construct a system of water-works in such city, and to maintain the same for a period of 99 years, and binding the city to pay for the use of at least 50 hydrants the sum of $60 a year for each hydrant, for the period of 21 years; that the provisions of the ordinance were duly accepted by Long and Doubleday, and that afterward they constructed the water-works in accordance with the terms and provisions of the ordinance, and that the water-works and hydrants were approved and accepted by the city. Afterward, and on February 9, 1888, Long and Doubleday sold, assigned and conveyed all their rights and interests in and to the water-works to the present plaintiff, the Columbus Water-works Company. Afterward the city levied taxes to pay for the rent of the hydrants for the years 1888, 1889, and 1890, and paid the rent for such hydrants up to the middle of the year 1890, the payments being made semi-annually, when the city refused to levy any further taxes or to pay any further rent; and this action is brought principally to require the city to levy a tax for the payment of such rent for the year 1891.

The question as to whether an action of *mandamus* is the proper remedy or not is waived by the defendants so far as to enable this court to determine the question whether the city is liable or not under or in accordance with the terms and provisions of the aforesaid city ordinance. They claim that the ordinance is wholly void for the reasons hereafter stated. It

is claimed on the part of the city that a city of the second class has no power by ordinance, or in any other manner, to enter into a contract such as was attempted to be made between the city of Columbus and Long and Doubleday in the present case; and this for the following reasons: First, it is claimed that the contract grants exclusive rights and privileges, and this for such a great length of time that they amount in effect to a perpetuity. Second, it is claimed that no such contract, as was attempted to be made in the present case, nor any contract like it, can be made except under or by virtue of a valid city ordinance, properly passed and published. Third, it is claimed that the ordinance under which the plaintiff claims in the present case is not a valid ordinance, for the reason that the records of the city do not show that, on the final passage of the ordinance, the yeas and nays were taken and entered upon the journal by the city clerk, but on the contrary show otherwise; and that in fact the yeas and nays were not taken, nor was there any vote taken upon the final passage of the ordinance. Fourth, it is claimed that the journal of the city council's proceedings is the only evidence that can be considered in ascertaining the facts with regard to whether a city ordinance was passed or not, and the manner in which it was passed. Fifth, it is also claimed that nothing could afterward be done by the city or Long and Doubleday, or between the parties, that would make the aforesaid ordinance valid, or that would make the contract entered into under it valid, or that would give to either any force or effect whatever.

The plaintiff claims the reverse of all this. It claims that a valid contract, such as was made in the present case between the city and Long and Doubleday, requiring, among other things, the city to pay rent for hydrants, could be made by the city either by means of an ordinance or otherwise; that the ordinance in the present case was regularly passed, approved, and published; that the yeas and nays on its final passage were in fact taken; that this may be shown and has been shown by the evidence introduced in this case, and the

facts agreed upon outside of the journal; that this evidence and the agreed facts do not contradict the journal, but simply supply an omission; but whether they do contradict the journal or not, or whether the original ordinance and the original contract were valid or not in their inception, is now immaterial, for the reason that the parties have since so acted as to ratify and confirm the contract, and make it valid and binding upon both parties.

The facts with respect to the passage of the original ordinance, which was numbered 70, and the facts claimed by the plaintiff to show a ratification and affirmance of the ordinance and of the contract made under it, and the facts claimed to create an estoppel against the city, are substantially as follows: On March 23, 1887, the council of the city of Columbus were regularly convened in special session, the mayor, E. A. Crewson, presiding. The aforesaid ordinance was presented to them for their consideration. It contained 16 sections. Each of these sections was considered separately by the council, and a vote taken thereon by yeas and nays, and upon each section there were five yeas and one nay — Councilmen Lea, Malone, Morris, Spencer and Bowles voting yea, and Councilman Vincent voting nay. It does not appear that there were any other councilmen of the city of Columbus at that time, and probably there were not. As to whether any vote was taken upon the final passage of the ordinance, the journal shows as follows:

"Section 1 was read. The mayor then submitted the question: 'Shall said section 1 of ordinance No. 70 be passed as read?' On call of roll, the members voted as follows: Vincent, no; Lea, aye; Malone, aye; Morris, aye; Spencer, aye; Bowles, aye. There being a majority of the council elect voting for the passage of said section, the same was declared duly passed and adopted.

"Each subsequent section of said ordinance, from 1 to 16, inclusive, was read separately and voted on separately by calling the ayes and nays, and each vote on each section separately resulted in five votes for the passage of each section of said ordinance; Morris, Malone, Spencer, Lea and Bowles

voted aye, and Vincent voting nay upon each section. The mayor now declared that each section of said ordinance from 1 to 16, inclusive, has been separately passed by a majority of the council elect; that therefore he declared said ordinance duly passed; that he thereupon approved and signed said ordinance. The same was duly attested by the city clerk, and the city clerk was ordered to have the same published as provided by law. On motion the council now adjourned."

Affidavits of Councilmen Vincent and Malone, which affidavits were by consent introduced in evidence, show that no vote was had upon the final passage of the ordinance; while, on the contrary, the deposition of E. M. Tracewell, who was the city clerk and also the city attorney, and the affidavits of Councilmen Lea and Bowles, all of which were by consent introduced in evidence, show that a vote was had upon the final passage of the ordinance, that the yeas and nays were taken, and that Councilmen Lea, Malone, Morris, Spencer and Bowles voted in favor of the ordinance, while Councilman Vincent voted against it. Also the ordinance appears to be valid upon its face. It was duly approved by the mayor, attested by the clerk, and published. Afterward, and on April 8, 1887, the council were in regular adjourned session. Mayor Crewson and Councilmen Lea, Bowles, Malone, Spencer, Morris and Vincent were present, and at such meeting the minutes show, the written acceptance of Long and Doubleday "of ordinance No. 70, as passed by the council on the 23d day of March, 1887, granting to the said Long and Doubleday a franchise and contract for the erection of water-works in the said city," was presented to the council, and by order of the council was spread upon the record as a part of the minutes; and the acceptance itself shows that it was an acceptance of the provisions of "ordinance No. (70) seventy, passed by the mayor and councilmen of the city of Columbus, Kas., at a special meeting called for the purpose and held on the 23d day of March, 1887." Long and Doubleday then commenced openly and publicly to construct the water-works in accordance with the provisions of said ordinance No. 70, and continued to so construct them until they were finally completed,

in December, 1887, without objection on the part of any-
one; and in constructing them they expended a great deal
of money and labor.   On May 25, 1887, after there had
been a change with regard to the person occupying the
mayor's office, and a partial change with regard to the mem-
bers of the council, another ordinance, numbered 71, was
duly passed, purporting to amend sections 6 and 7 of the
original ordinance, No. 70, authorizing the use of a stand-pipe,
etc., upon the passage of which ordinance all the members of
the city council present, to wit, Malone, Morris, Butler, Cris-
man, Wilson, and Bowles, voted for the amendatory ordinance.
Councilmen Vincent and Best were absent.   This ordinance
was approved by the new mayor, R. N. Cheshire.   On June
13, 1887, at a special meeting of the city council, called by
the mayor at the request of Councilmen Crisman, Vincent, and
Bowles, at which meeting all the members of the council and
the mayor were present, the hydrants provided for by the orig-
inal ordinance No. 70 were located.   At the regular meeting of
the city council, on October 3, 1887, Long and Doubleday
were present and asked for an extension of time for the com-
pletion of the water-works; and the city council then passed
an ordinance, No. 75, purporting to amend section 16 of the
original ordinance, No. 70, so as to extend the time for the
completion of the water-works to January 1, 1888; on the
final passage of which ordinance No. 75, Councilmen Morris,
Crisman, Wilson, Malone, Butler and Bowles voted yea, and
Councilman Vincent voted nay.   This ordinance was ap-
proved by the mayor, Cheshire, and was duly published.   At
a special meeting called by the mayor, upon the request of
Councilmen Wilson, Butler, and Morris, and held on January
27, 1888, the following proceedings were had, as shown by
the minutes, which read as follows:

"Pursuant to the foregoing call, the council met at 8 o'clock
P. M., Mayor Cheshire presiding.   On roll-call the following
councilmen responded 'present:' Morris, Crisman, Butler,
Malone, and Bowles.   The mayor then stated that all council-
men elect had been personally notified of the call for this

special meeting, and announced that the council would now proceed with business before them, there being a quorum present.   Councilman Malone then requested a report from Councilman Crisman as chief of the fire department, as to the efficiency of the water-works and the test made of same. Councilman Crisman then stated in open council that in accordance with § 9 of ordinance 70, granting to R. A. Long and L. L. Doubleday a franchise to construct and operate water-works in the city of Columbus, Kas., that a test of the water-works aforesaid having been made by the fire department, mayor and council of said city, on or about the 30th day of December, 1887, and a second test made January 6, 1888, and that from such test said water-works fulfilled the requirements of said ordinance.   He thereupon introduced the following resolution:

"'Be it Resolved by the Mayor and Council of the city of Columbus now in Council Assembled, That the water-works constructed in the city of Columbus, by Messrs. R. A. Long and L. L. Doubleday, under and by virtue of ordinance No. 70, entitled 'An ordinance granting to R. A. Long and L. L. Doubleday, their heirs and assigns, the right to construct and operate water-works in the city of Columbus, Kas., also contracting for the supply of water for extinguishing fires and other purposes,' and also under ordinances numbered 71 and 75, being amendments to said ordinance No. 70, be and are hereby approved and accepted, and that the rental of the fire hydrants of said water-works constructed as aforesaid shall commence on January 1, 1888.

J. A. CRISMAN, Chief of Columbus Fire Department.'

"By motion, Councilman Bowles moved that said resolution be adopted, and that it be voted upon by yeas and nays. The roll of councilmen then being called, the vote was as follows: Morris, aye; Crisman, aye; Butler, aye; Malone, aye; and Bowles, aye.   The mayor then declared the resolution unanimously adopted.   There being no further business, the council adjourned.               R. M. CHESHIRE, Mayor.

"Attest: W. J. MOORE, City Clerk."

Afterward, and for the years 1888, 1889, and 1890, taxes were levied by the city to pay for the use of the hydrants, as provided for in the original ordinance No. 70, and the rent for such hydrants was in fact paid for the years 1888, 1889, and the first half of the year 1890.   The plaintiff, the water-works company, and its predecessors, Long and Doubleday, complied with all the terms and provisions of all the ordinances, and fulfilled their part of the contract in every respect. furnishing to the city the hydrants and the water contracted

for; while the city, on its part, complied with all the terms and provisions of the ordinances, and fulfilled its part of the contract by receiving the hydrants and the water, and levying taxes to pay for the same, and paying for the same up to July, 1890, when the city refused to levy any further taxes or to pay any further rent for the hydrants.

The only grounds upon which it is now claimed that ordinance No. 70 is not valid are, that no vote was taken upon its final passage; that the yeas and nays upon its final passage were not taken, and that they were not entered upon the journal by the city clerk; and it is claimed that all these things must occur in order to render the ordinance valid. Section 9 of the second-class-city act, so far as it is necessary to quote it, reads as follows:

"SEC. 9. All ordinances of the city shall be read and considered by sections at a public meeting of the council, and the vote on their final passage shall be taken by yeas and nays, which shall be entered on the journal by the clerk, and no ordinance shall be valid unless a majority of all the members elect vote in favor thereof."

In our opinion the evidence satisfactorily shows that the ordinance was finally passed; that a vote was taken upon its final passage; that the vote was taken by yeas and nays; that Councilmen Morris, Malone, Spencer, Lea and Bowles voted yea, and that Councilman Vincent voted nay; but that such vote was not entered upon the journal by the city clerk; and the clerk himself testifies with reference to how this failure happened. The clerk at the time was Edward M. Tracewell. He was also at the same time the city attorney, and he advised the council not to pass the ordinance. The meeting was held in the office of the mayor, while the journal was at his own office, in another part of the city. Tracewell, at the time the ordinance was passed, had, as the city attorney, the statutes prescribing how city ordinances should be passed open before him, and he remembers not only that a vote on the final passage of the ordinance was taken, and that it was taken by yeas and nays, but also that it was taken in exact

accordance with the statutes, as he then had them open before him. He took minutes of the meeting at the time on slips of paper, but afterward, when he came to record the minutes, he thinks he must have lost the slip containing the final vote, and by that means failed to enter it upon the journal. His evidence is contained in a deposition, and counsel for the city appeared at the time the deposition was taken and cross-examined him. Upon the entire evidence, we think the ordinance was legally and properly passed; that the vote on its final passage was taken by yeas and nays, and was in all probability *entered upon a slip of paper*, but was not properly entered upon the journal; and this is the only irregularity. Will this irregularity render the ordinance invalid? It is not every irregularity that will invalidate an ordinance. Many irregularities may occur in bringing an ordinance into existence, or in recording or preserving the evidence of its existence, and the ordinance still be valid. (*City of Troy v. A. & N. Rld. Co.*, 11 Kas. 519; *City of Solomon v. Hughes*, 24 id. 211.) The ordinance in the present case was passed by the city council, approved by the mayor, and attested by the clerk, all on March 23, 1887, and it was duly published on April 8, 1887; and it appears to be valid upon its face. Whether at the time of its publication any of the minutes of the meeting of March 23, 1887, had been entered upon the journal, the evidence does not show. That some of such minutes had not been so entered, the evidence does, however, show. And will this failure, or any failure on the part of the clerk to properly enter the minutes upon the journal, render the ordinance invalid, or place it in abeyance until he does so enter the minutes upon the journal? Usually the failure of the clerk to make proper entries of the proceedings of the body or tribunal for which he acts as clerk will not invalidate such proceedings. (*Gillett v. Comm'rs of Lyon Co.*, 18 Kas. 410; *K. C. Ft. S. & G. Rld. Co. v. Tontz*, 29 id. 460.) Even a judgment may be valid and binding before any entry thereof is made, or notwithstanding an improper entry thereof.

Upon this subject Mr. Black, in his work on Judgments, (Vol. 1, §§ 106, 110,) uses the following language:

"The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy, as ascertained by the pleadings and the verdict. The entry of a judgment is a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given, and designed to stand as a perpetual memorial of its action. It is the former, therefore, that is the effective result of the litigation. In the nature of things, a judgment must be rendered before it can be entered. And not only that, but though the judgment be not entered at all, still it is none the less a judgment. The omission to enter it does not destroy it, nor does its vitality remain in abeyance until it is put upon the record. The entry may be supplied, perhaps after the lapse of years, by an order *nunc pro tunc.* But it must not be supposed that this proceeding is required to give existence and force, by retrospection, to that which before had none. As is said by the supreme court of California: 'The enforcement of a judgment does not depend upon its entry or docketing. These are merely ministerial acts, the first of which is required to be done for putting in motion the right of appeal from the judgment itself, or of limiting the time within which the right may be exercised, or in which the judgment may be enforced; and the other, for the purpose of creating a lien by the judgment upon the real property of the debtor. But neither is necessary for the issuance of an execution upon a judgment which has been duly rendered. Without docketing or entry, execution may be issued on the judgment and land levied upon and sold, and the deed executed by the sheriff in fulfillment of the sale, not only proves the sale, but also estops the defendant from controverting the title acquired by it.' And it follows, *a fortiori,* that if the entry, though attempted to be made in due form, does not correctly record the sentence of the court, or is defective or ambiguous or otherwise exceptionable, still this will not weaken the force of the judgment as a judgment." (Sec. 106.)

"The object of this entry is to furnish an enduring memorial and incontestable evidence of the judgment, and to fix its date for purposes of appeal or creating a lien. But, as was stated in the beginning of this chapter, this proceeding is min-

isterial only, and is not essential to the validity of the judgment itself. It is none the less the judgment of the court because not entered by the clerk; and, except for certain special purposes, it does not remain inchoate or unfinished until so entered. Hence the neglect or failure of the clerk to make a proper entry of record of the judgment, or his defective or inaccurate entry of it, will not, as between the parties, operate to invalidate the judgment. 'The fact that the clerk did not perform his entire duty in making up the record cannot deprive parties of their rights.'" (Sec. 110.)

Suppose that in the present case, after the ordinance was passed, approved, published, and accepted, Long and Doubleday had immediately constructed the water-works at a cost of perhaps $75,000, and suppose that the minutes of the passage of the ordinance had not yet been entered by the clerk upon the journal, or had been entered inaccurately : would all that had been done be void, and would Long and Doubleday have no remedy? This certainly cannot be the law. Could the city clerk, by his failure to perform his duty, defeat the ordinance and everything done under it? Or could all the officers of the city combined, after the ordinance has been acted upon by others, destroy its effect, and repudiate all obligation under it on behalf of the city? For the purposes of this case, but without so deciding, we shall assume that an ordinance in the nature of a law regulating future conduct would be void unless the journal kept by the city clerk should show that the ordinance was regularly passed; but can it be possible that an ordinance in the nature of a contract between the city and an individual person should be void because of any failure on the part of the city clerk to enter upon the journal an accurate statement of the passage of the ordinance? Can contracts between cities and individual persons be destroyed, canceled or annulled in that manner? Can a city, after inducing persons to expend time, labor and money under an ordinance regularly passed, approved, attested, published, and accepted, then take advantage of any failures on the part of its own officers to perform their duties, and repudiate its own obligations? It must be remembered that in this case the

work of constructing the water-works went on at great cost, openly and publicly, from month to month, under the eyes of the officers of the city and its inhabitants, without objection, but really with encouragement, until they were finally completed; and can the contract now be repudiated by the city? We would think not, and, as we have all the interested parties before us — the city in its corporate capacity, and nearly all its officers, its mayor, its councilmen, the city clerk, the city treasurer, and others — we think we can make an order that will do full justice in the case. It is our opinion that a peremptory writ of *mandamus* should be allowed and issued in this case, requiring that the entry now on the city's journal concerning the passage of the ordinance No. 70 should be so corrected by an entry *nunc pro tunc* as to make it show that the ordinance was regularly passed as required by law, and in accordance with the findings and judgment of this court, and that the mayor and council shall levy the tax asked for in the alternative writ, and perform all other duties which may be incumbent upon them under the provisions of the ordinance as a valid ordinance. With reference to the ratification of irregular or void contracts, see the following authorities: *Tube-Works Co. v. City of Chamberlain,* 5 Dak. 54; same case, 37 N. W. Rep. 761; *Moore v. Mayor,* 73 N. Y. 238; *Peterson v. Mayor,* 17 id. 449; *Board of Agriculture v. Street Rly. Co.,* 47 Ind. 407; *Mills v. Gleason,* 11 Wis. 470; *Knapp v. Grant,* 27 id. 147; *Supervisors v. Schenck,* 5 Wall. 772; *Howe v. Keeler,* 27 Conn. 538; *Brown v. City of Atchison,* 39 Kas. 37; *Sullivan v. School District,* 39 id. 347; 1 Dill., Mun. Corp., (4th ed.,) § 463; 15 Am. & Eng. Encyc. of Law, 1102.

*Marginal note:* Mandamus — passage of ordinance — correction of minutes — levy of taxes.

Some further questions have been presented to this court by the briefs and oral arguments of counsel, but we do not think that they require any further comment on our part. Whether a city can grant a special or exclusive privilege to any one for either a long or a short period of time, we do not think it is necessary now to consider, for we do not think that any such question is fairly presented by the facts of the case.

A city has the power to grant a privilege to a person or corporation to establish water-works in the city, and has the power to rent hydrants from such person or corporation. (*Manley v. Emlen*, ante, p. 655.)   But it is not necessary now to consider the question whether such privilege can be made special and exclusive or not, or whether it would be valid or not after the lapse of 5, 10, 15 or 20 years, or after a substantial change had taken place in the affairs of the city, or in its wants or needs, or those of its inhabitants.

The peremptory writ of *mandamus* will be allowed and issued as heretofore stated.

All the Justices concurring.