## THE COLUMBUS WATER-WORKS COMPANY v. THE CITY OF COLUMBUS.

1. CITY—*Contract with Water Company, When Upheld.* A city of the second class has the power to enter into a contract with private parties or a corporation for water to be furnished to it for fire protection by such party or corporation; and when a city of the second class has entered into such a contract, and a water-works plant has been erected and maintained at a great expense for a period of four years or more, and during that period the corporation owning the plant has furnished water in accordance with a contract entered into and recognized by the city, and the city has levied the proper tax and paid the hydrant rental for three years, and otherwise recognized the validity of such contract, *held,* that this court will not hold the contract void, under the facts as stated in the petition, because the city did not possess the power to make a contract for the period of 21 years. While the city may be powerless to make a contract for the duration alleged, still the contract should be upheld for a reasonable time, when the circumstances and condition of the city as to population and assessed valuation are substantially the same, and no better facilities are offered upon more reasonable terms.

2. ———— *Tax Limitation.* The tax limitation imposed by ¶ 796 of the General Statutes of 1889, restricting the levy of all city taxes of the current year to 4 per cent., only applies to city taxes for general purposes.

*Original Proceeding in Mandamus.*

ACTION brought in this court by the *Columbus Water-Works Company*, against the *City of Columbus* and its officers, to compel the levy of a tax to pay hydrant rental. All the material facts are stated in the opinion, filed February 6, 1892.

*John N. Ritter*, for plaintiff.

*J. D. McCleverty*, for defendant.

Opinion by GREEN, C.: This is an original action in *mandamus*, brought by the Columbus Water-Works Company against the city of Columbus, its officers, and others, to compel the levy of a tax upon all of the taxable property in the city, to pay the hydrant rental upon fifty hydrants for the year 1892, and for an order directing the city clerk to certify the same to the county clerk, for the county clerk to place such tax upon the tax-rolls of the county, and for the county treasurer to collect such tax and pay it over to the city treasurer for the use of the plaintiff. The same parties were before this court to have the hydrant rental levied for the year 1891. The agreed statement of facts and the proceedings in that case are made a part of the plaintiff's petition in this case. The facts being substantially the same as in that case, reference is made to that case for a full statement of all the facts. (See *Water-Works Co. v. City of Columbus*, 46 Kas. 666.) Since the decision in that case, the city of Columbus has notified the water-works company that it would not receive and pay for water upon the terms heretofore charged, after the 15th day of August, 1891, and gave notice to its fire department to no longer use water from the public hydrants of the company after said date. The water company notified the city that it would continue to furnish water in accordance with the ordinance passed on the 23d day of March, 1887. The city refused to make any provision for the future payment of

hydrant rentals.  To the petition of the water company the city has interposed a general demurrer.

To reach a decision in this case, the defendant has waived the question as to whether the action of *mandamus* is the proper remedy or not.  The defendant now insists that a city of the second class cannot create a continuing liability, covering, as in this case, a period of 21 years, under an exclusive franchise for 99 years.  The authority of a city of the second class to make provision to furnish water to its inhabitants, and for fire protection, has been settled in this state; and a city has the authority to grant a franchise to a person or corporation to establish water-works, and is empowered to rent hydrants from such person or corporation. (Gen. Stat. 1889, ¶¶ 787, 817, 1401, 1402, 7185–7190; *Wood v. Water Co.*, 33 Kas. 590; *Water-Works Co. v. City of Burlington*, 43 id. 725; *Water Co. v. City of Columbus*, 46 id. 666; *Manley v. Emlen*, 46 id..656; Dill., Mun. Corp., 4th ed., §§ 146, 443, and note to § 568; 15 Am. & Eng. Encyc. of Law, 1115, 1118, and cases there cited.)

But it is urged that a contract extending over a period of 21 years cannot be enforced, because the officers of the municipality had no authority to bind their successors for such a length of time; that § 2 of the bill of rights, which provides "that no special privileges or immunities shall ever be granted by the legislature which may not be altered, revoked or repealed by the same body," is an inhibition against any such power.  The leading cases upon this question are in conflict as to whether such a contract as the plaintiff sets out in its petition creates a monopoly or not.  The question has frequently arisen between rival light and water companies; sometimes by corporations against cities, for the hydrant rentals, when the latter continued to use the water for fire purposes.  In this case the city has attempted to cease using the water for any public purpose, and thus relieve itself from all liability on the contract previously entered into to pay a rental of $3,000 a year for the use of 50 hydrants.  The question before us has received the attention of the courts of last resort, both federal

and state, of late years, and it is somewhat difficult to reconcile the different decisions. The supreme court of the United States has held —

"That a gas company, incorporated in 1835, with the exclusive privilege of making and selling gas in New Orleans, its faubourgs, and Lafayette, up to April 1, 1875, could, under an act of the legislature, consolidate with another company; and that a legislative grant of an exclusive right to supply gas to a municipality and its inhabitants through pipes and mains laid in the public streets, and upon condition of the performance of the service of the grantee, is a grant of a franchise vested in the state, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the constitution of the United States against state legislation to impair it."

In granting the exclusive franchise to a municipality, a state does not part with the police power and duty of protecting the public health, the public morals, and public safety, as one or the other may be affected by the exercise of that franchise by the grantee.

The prohibition in the constitution of the United States against the passage of laws impairing the obligation of contracts applies to the constitution as well as the laws of each state. (*Gas Co. v. Light Co.*, 115 U. S. 650; *Water Co. v. Rivers*, 115 id. 674; *Gas Co. v. Gas Co.*, 115 id. 683; *Water-Works v. Water-Works*, 120 id. 64.)

In *Street Rly. Co. v. Street Rly. Co.*, 73 Iowa, 513, the city of Des Moines had had the authority to grant or prohibit the laying down of street-car tracks within its limits. The court held that, although there was no grant of power in express terms authorizing the council to confer an exclusive privilege in the use of streets, under the circumstances of the case and to procure a better public service, the council could grant a valid exclusive right for the limited period of 25 years, such contract being necessary to secure the service which it might not otherwise be able to obtain. The court also decided that the constitutional restriction, which declared that no exclusive privileges should be granted except as provided for in the

constitution, did not apply to the grant by a city to a person or company of the exclusive right to build and operate street railways.

In the case of *City of Newport v. Light Co.*, 8 Ky. Law Rep. 22, it was held that when a municipal corporation has the power, express or implied, to contract with others to furnish its inhabitants with the means of obtaining gas at their own expense, it has the power to make a contract granting to a corporation the exclusive right to the use of its streets for that purpose for a term of years. The charter of the city did not, in express terms, give the power to the city to grant an exclusive privilege. The court rested its opinion upon the following grounds: First, that the power given the municipality to provide for lighting the city included the power to grant the exclusive right to the use of the streets for that purpose; and, secondly, that the Newport light company was invested, in express terms, by a provision contained in the charter, with the right to furnish any city, town, district or corporation or locality, or any public institution, etc., on such terms as may be agreed upon. The same court has held, in a more recent case, that where a party contracts with a city for the exclusive right to remove the carcasses of dead animals therefrom, and to use its public streets for this purpose, the law will protect him in his monopoly, and the work cannot be engaged in by others as a general business enterprise. (*City of Louisville v. Wible*, 84 Ky. 290.)

In New Jersey, a contract was entered into by Atlantic City with the Atlantic City Water-Works Company for a supply of water, calling for a certain annual payment, without any limit as to time, except that the city might take the water-works at a valuation; and it was held that such a contract was legal and binding on the city. (*Water - Works Co. v. Atlantic City*, 48 N. J. Law, 378.) Subsequently it was held by the court of chancery of New Jersey, that, by an amendment made to the constitution in 1875, which declared that "the legislature shall not pass private, local or special laws granting to any corporation, association or individual any exclusive privileges,

immunity, or franchise whatever," the exclusive right could not be granted to a water company to use the streets of a city. (*Water - Works Co. v. Water Co.*, 44 N. J. Eq. 427.)

In Tennessee, it has been held that the granting of the privilege by a municipal corporation, by legislative enactment, to a private corporation, for its exclusive use for a term of years, is not unconstitutional; and, having been granted, is, during the term of a contract, beyond the reach of subsequent legislative interference. It was decided that, notwithstanding the constitution forbids perpetuities and monopolies, an exclusive privilege to a city to erect water-works was not a monopoly, and that granting an exclusive privilege for a term of years to a private corporation did not render it a monopoly. (*City o f Memphis v. Water Co.*, 5 Heisk. 495.)

The supreme court of Wisconsin has decided that the legislature could confer upon a private corporation the exclusive right to manufacture and sell gas, and to erect works and lay pipes therefor within the limits of the corporation. (*The State v. Gaslight Co.*, 29 Wis. 454.) There seemed to be no constitutional limitation when this case was decided, and the court expressly held that the legislature might create a monopoly.

The supreme court of Connecticut, in the case of *Water Co. v. Hydraulic Co.*, 55 Conn., 1, where the city council of Bridgeport had accepted a proposition from a party to supply the city with water, and granted him, with the power of assignment, the exclusive right to lay pipes in the streets so long as a full supply of pure water should be furnished, and the Bridgport Hydraulic Company acquired such right by assignment, and expended large sums of money in establishing water-works, held that, so long as this company supplied the city with an abundance of water, the legislature had no power to give another corporation the right to lay pipes in the streets of the city for the purpose of supplying the city with water. The court said —

"That it was the duty of the court to preserve contracts inviolate, rather than to destroy monopolies. The legislature, having in effect authorized the city to make a contract which

it desired to make, will not — cannot — now relieve it. Although the state is no party to, and has no interest whatever in, the subject-matter of a contract, if it volunteers to invest a creature of its own, otherwise powerless, with power to make it, the legislature is thereafter concluded in reference to it. It is a lawful contract between two natural persons of full legal capacity, sacred from any interference other than judicial construction."

The court of appeals of New York has decided squarely against this doctrine. Under a law passed in 1865, Middletown was authorized to contract with a gas company for street lighting, but was given no specific power to make a continuing contract. The town made a contract for five years. In 1866 the law of 1865 was unconditionally repealed. The gas company brought an action to recover for gas furnished in 1870, under a contract made with the board of town auditors in 1865. The court said:

"Prior to the passage of the act of 1865, the town had no power to cause any of its streets to be lighted with gas or in any other way. By that act such power was conferred upon the defendant. For what time? The learned counsel for the appellant insists, for the term of five years at least, for which the contract was entered into by the plaintiff with the town auditors to furnish gas, and that during that time the legislature had no power to relieve the town or any part of it from the expense of lighting all the streets embraced in the contract, whatever the necessity for such relief might be. If the board of town auditors could deprive the legislature of this power for five years, by entering into a contract with the plaintiff for that time, it might for 100 years by contracting for that period. I think it clear that no such power was conferred by the act upon the town auditors." (*Gas Co. v. Middletown*, 59 N. Y. 228.)

In *City of Chicago v. Rumpff*, 45 Ill. 90, it was held that municipal corporations were created solely for the public good, and to that end the corporate authorities were held to a strict exercise of the franchises conferred; that a right to do all slaughtering of animals within the city of Chicago for a specified period was void, because creating a monopoly.

In *Gale v. Kalamazoo*, 23 Mich. 344, where a party had

been given the right by contract with the municipality to build and control a market-house for the period of 10 years, the contract was held void because it created a monopoly.    Judge Cooley said in this case:

" It is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise.    Those powers are conferred in order to be exercised again and again, as may be found needful or politic; and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or dimish their efficiency, but must transmit them unimpaired to their successors.    This is one of the fundamental maxims of government, and it is impossible that free government, with restrictions for the protection of individual or municipal rights, could long exist without its recognition."

The same question was considered in the case of *The State v. Gaslight Co.*, 18 Ohio St. 262, where the charter of the city conferred on the gas company power " to manufacture and sell gas, to lay pipes, etc., provided the consent of the city council be obtained for that purpose."    Under the power given to the city council of Cincinnati, " to cause said city or any part thereof to be lighted with oil or gas, and to levy a tax for that purpose," it contracted to invest the defendant with full power and exclusive privilege of using the streets, etc., for the purpose of lighting the city for the period of 25 years, and thereafter until the city should purchase the gas-works.    It was held that, while there was no doubt about the city's authority to make the contract for gaslight, there was no necessity for making such right exclusive.

In *Logan v. Pyne*, 43 Iowa, 524, the city of Dubuque had granted to the plaintiffs the exclusive privilege and franchise of running omnibuses to carry passengers upon the streets of the city from the 4th day of January, 1872, to the 1st day of January, 1877.    The plaintiffs alleged that they had complied with the ordinance granting them such right, and charged the defendant with violating their right by running omnibuses upon the streets of the city, and that he had received large

sums of money which the plaintiffs were entitled to under the ordinance granting them such right. The court held:

"The powers of municipal corporations are limited to the express terms of the grant, and will not be extended by inference. A municipal corporation can confer exclusive privileges for the prosecution of business only under an express grant of power from the legislature. Monopolies being prejudicial to the public welfare, the courts will not infer grants thereof, refusing to presume the existence of legislative intention in conflict with public policy."

In the case of *City of Brenham v. Water - Works Co.* (Tex.), 4 S. W. Rep. 143, a city ordinance granted to the water company the right and privilege, for the term of 25 years from the adoption of the ordinance, of supplying the city of Brenham and its inhabitants with water for domestic and other purposes, and for the extinguishment of fires. By the ordinance the city agreed to pay to the water company $3,000 per annum, during the term of 25 years, as hydrant rental. The charter gave the city power to provide the city with water for the convenience of the inhabitants and the extinguishment of fires. A general law authorized any city in which a water company was organized to contract with it for supplying the city with water. It was held that, while the several laws, taken together, undoubtedly authorized the city to make some contract for supplying itself with water, yet they did not confer on the city express power to make a contract granting the water company the exclusive right to supply the city and inhabitants with water for 25 years at a fixed rate per annum; and as no such power was necessary to the proper exercise of the power expressly granted, it could not be implied, and that such a contract was unauthorized and invalid. In this case the court said:

"We do not wish to be understood to hold that a municipal corporation has no power, in any event, to contract for such things as are consumed in their daily use for a period longer than the official term of the officers who make the contract; but we do intend to be understood to hold that such corporations have no power to make contracts continuous in character,

in reference to such things or any others, by which they will
be, in effect, precluded from exercising from time to time any
power, legislative in character, conferred upon them by law."

In *Davenport v. Kleinschmidt*, 6 Mont. 502 (same case, 13
Pac. Rep. 249), it was held that the grant by a city council of
the exclusive right of selling to the city of Helena all the water
required by it for sewerage and fire purposes for the period of
25 years, at a minimum rate fixed in the contract, was a mo-
nopoly; and this, though the grant does not prevent other
people from selling water to private citizens; that a city coun-
cil has no authority to grant to any person a monopoly, even
where no express prohibition is found in the charter or other
acts of the legislature. In delivering the opinion in this case,
among other things, Mr. Justice McLeary said:

"Then, the power to provide the city with water, by mak-
ing a proper contract with some person to erect water-works
and sell water to the city, being conceded, the next question
that presents itself is as to the power of the city to make this
particular contract. Is the present such a contract as to be
beyond the power of the city council to enter into, so as to
bind the municipal corporation? Does this contract create a
monopoly? For, if it does, it goes beyond the power of a
city council. Monopolies may be created; but they must be
called into being by the sovereign power alone. A city coun-
cil has no authority to grant to any person a monopoly, even
where no express prohibition is found in the charter or other
acts of the legislature. Monopolies are contrary to the genius
of a free government, and ought not to be encouraged by the
people or countenanced by the courts, except when expressly
authorized by positive law. In many of the state constitu-
tions, an announcement of this principle is already explicitly
declared. A monopoly is defined by the best and oldest law
writers to be 'an institution or allowance by a grant from the
sovereign power of a state, by commission, letters patent, or
otherwise, to any person or corporation, by which the exclu-
sive right of buying, selling, making, working or using any-
thing is given.' (2 Bouv. Law Dic. 194; 5 Bac. Abr. 'S.'; 3
Co. Inst. 181.) It has also been well defined in a late work as
follows: 'The popular meaning of "monopoly" at the present
day seems to be the sole power (or a power largely in excess
of that possessed by others) of dealing in some particular com-

modity, or at some particular place or market, or carrying on some particular business.'" (2 Rap. & L. Dict. 834, 835.)

In *Minturn v. Larue*, 23 How. 435, it was held that a charter authorizing the city of Oakland to establish and regulate ferries, or to authorize the construction of the same, gave no power to the city to grant an exclusive privilege. In delivering the opinion of the court, Mr. Justice Nelson said:

"It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public."

In the case of *Jackson Co. Horse Rly. Co. v. Rapid Transit Co.*, 24 Fed. Rep. 306, Judge BREWER, now of the supreme bench, held that, in the absence of express authority in its charter, the City of Kansas had no power to grant to a street railway company the sole right, for the space of 21 years, to construct, maintain and operate a railway over and along the streets of such city. In deciding that case, the judge observed "That he had been charged with the duty of preparing the opinion of this court in the case of *Atchison Street Rly. Co. v. Mo. Pac. Rly. Co.*, 31 Kas. 660, where the right of a street railway to occupy the streets of the city was challenged; that the opinion there formed by him had not been changed by the able and exhaustive argument of the learned counsel for the complainant. There, as here, the city was given by its charter general supervision and control of the streets of the city, but was not given, in express terms, power to authorize street railroads. In other words, the power vested in the city and the extent to which that power had been exercised by the city are alike. The court did not decide the precise question here presented, but expressly declined to give any opinion thereon, holding that, under the grant of general supervision and control of the streets, the city had power to permit the

occupation of its streets by a street railroad. But obviously there was opened for inquiry the broad question of the power of a city under such a general grant, and that question was made the subject of full and careful investigation."

In *Gaslight Co. v. City of Saginaw*, 28 Fed. Rep. 529, it was held that authority given "to cause the streets of a city to be lighted, and to make reasonable regulations" with reference thereto, did not empower the city government to grant to one company the exclusive right to furnish gas for 30 years; that the exclusive right to light a city with gas for 30 years was not legally "impaired" by a subsequent contract with another company to light the streets of the city with electricity. This case was decided by Judge Brown, now of the supreme court of the United States, and the authorities were fully reviewed, and the principles involved were elaborately discussed.

In the case of *Horse Rly. Co. v. Cable Tramway Co.*, 30 Fed. Rep. 328, Judge BREWER said:

"This rule of construction against the grantee, which applies in all legislative grants, obtains with the greater force in a case like the one at bar, where the grant claimed is not merely the right to do something, but of a right to exclude all of the rest of the public from doing that thing. He who says that the state has given him a franchise, a right to do that which without that franchise he could not do, will be compelled to show that the franchise, the right claimed, is within the terms of his grant. Much more strenuous must be the demand upon him for clear and explicit language in his grant when he claims that a part of it is not merely the franchise, the right to do, but also the right to exclude all others of the public from exercising the same right, and the state, as the representative of the public, from according the same right to another."

See, also, *Proprietors, etc., v. Wheeley*, 2 Barn. & Adol. 793; *Charles River Bridge v. Warren Bridge*, 11 Pet. 422; *Perrine v. Canal Co.*, 9 How. 172; *Grand Rapids E. L. & P. Co. v. Grand Rapids E. E. L. & F. Co.*, 33 Fed. Rep. 659.

The supreme court of Pennsylvania has stated the rule with reference to the grant of franchise in *Railroad Co. v. Canal Comm'rs*, 21 Pa. St. 22:

"When a state means to clothe a corporate body with a por-

tion of her own sovereignty, and to disarm herself to that extent of the power that belongs to her, it is so easy to say so, that we will never believe it to be meant when it is not said. In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation."

Judge Drummond said, in the case of *Garrison v. City of Chicago*, 7 Biss. 488:

"The officers of the city—the members of the council—are trustees of the public. They are clothed with authority to legislate upon public interests. There can be no doubt that the right to regulate the lighting of the streets, and to furnish means for the same by taxation, is in its nature legislative power. It concerns the whole public of the city. The effect of the contract in question by the city authorities in October, 1869, if valid, was to bind their successors for 10 years as to those matters of legislation. If it be conceded that the power existed as claimed, then it practically follows that at the end of the term, in 1879, a contract may be made by their successors without limit, and which may bind the public indefinitely. I am unwilling to sanction a principle which, in a case like this, would lead to such results. The safer rule is to hold the officers of a municipality to a rigid accountability in the discharge of their trust. In all cases of contracts to run for years, the authority to make them should be clear; because they involve pecuniary liability, and it is a tax upon future property-owners of the city. To sustain the contract between the city and gas company in this case would encourage the making of such contracts in the future. It would place it in the power of companies whose interests were to be affected by them to multiply them, and to continue them when the public interest demanded they should cease. To condemn it is to prevent, so far as it may tend to produce that result, the use of influences which look to private rather than to public profit. It is better that all parties should understand there is a limit to the power of municipal bodies in such cases."

The supreme court of Illinois passed upon a question similar to the one now under consideration in the case of *City of East St. Louis v. Coke Co.*, 98 Ill. 415, where it was held that—

"It does not appear in the case, nor is it claimed, that the city has exercised its powers by ordinance or otherwise, or

manifested a wish to provide differently than as by the contract. So far as the contract has been executed, it has been one for the furnishing of the light during the pleasure of the city. Courts should not destroy the contract made by parties further than some good reason requires. Such an objection is made to this contract. That it interferes with the exercise of the legislative or governmental power of the city over the subject, does not require that the contract should be held void, but only voidable so far as it is executory."

To the same effect are *Gaslight Co. v. City of Decatur*, 24 Ill. App. 544, and *Water-Power Co. v. City of Carlyle*, 31 id. 325; *Bradley v. Ballard*, 55 Ill. 413.

It will be seen by this extended review of the authorities, both state and federal, that there are three classes of decisions upon this important question. The supreme court of the United States holds that where there has been an express legislative grant, upon a condition of performance, in consideration of such performance and public service, after performance by the grantee it becomes a contract which is protected by the constitution of the United States. A number of states, notably Tennessee and Wisconsin, have said that such a grant is not a monopoly, and is fully protected and held as inviolable as a contract between private parties or private corporations; while other states and some federal courts have held that a municipal corporation cannot make contracts beyond the legislative life of its mayor and governing body. We are not ready to indorse the latter class of decisions, or to go to the full extent of the former. We are not inclined to the opinion that the question that the city has attempted to grant an exclusive franchise is necessarily material in this case, under its present *status*. It is not a question between contending water companies as to which shall have certain privileges. No company is offering to furnish a better supply of water upon more reasonable terms; hence we do not think the franchise should now be held void by reason of its exclusiveness. That question should not be decided until it is before us in a case in which it would be proper for us to pass upon it. Again, if we are to follow former precedents, much of the argument of counsel for the

city is lost, wherein he contends that the franchise claimed is in direct conflict with § 2 of the bill of rights. This court has said, speaking through Mr. Justice BREWER, that the words, "no special privileges or immunities," refer to privileges or immunities of a political nature. (*Street Rly. Co. v. Mo. Pac. Rly. Co.,* supra.)

It is conceded that the plaintiff has only been furnishing water to the city of Columbus for a period of a little more than four years, the works having been tested and accepted on the 28th day of December, 1887. So far as the plaintiff can make it, the contract is an executed one; and during the period of its existence while the city used the hydrants and paid the rental it became an executed contract, so far as the city was concerned. Now, the city having, by its contract and permission, invited the expenditure of a large sum of money by the plaintiff in erecting its works, in order to give the city such fire protection as it had agreed to pay for in the manner indicated in the ordinance, should not the water company be given a reasonable time in which it might have the benefits of a contract which had been agreed to and recognized? Or, shall we say that, because there was no express authority to make the contract for the period of 21 years, it is therefore void? To hold to the latter proposition, when the parties cannot be placed in the same condition they were in before the contract was executed, would be a violation of the plainest rules of good faith. The plaintiff alleges that in pursuance of the contract it has expended large sums of money in constructing its water plant; that bonds to the amount of $60,000 have been issued, which are secured by a mortgage upon said plant; that the rentals from private consumers of water, and other resources, are not sufficient to pay the interest on the bonds as the coupons mature, and it has no means of paying the interest except from the rentals which the city had contracted to pay; that the city has no other supply for water, and no other franchise has been granted; and that the city and its inhabitants are without protection from fire except as provided by the plaintiff; that the city is practically the same size

8—48 KAS

it was in 1887, and the taxable property is substantially the same now as then. As the case stands here upon demurrer, of course we assume these facts to be true.

In *Hitchcock v. Galveston*, 96 U. S. 341, the city council had contracted with the plaintiffs to build certain sidewalks, to be paid for by the city in bonds. The work was partly performed, but the city council stopped the work and prevented its completion. An action was brought for a breach of the contract. It was urged that the city had no power to make such a contract, and it had no authority to issue the bonds of the city. The court said:

"It is enough for the plaintiffs that the city council have the power to enter into a contract for the improvement of the sidewalks; that such contract was made with them; that under it they have proceeded to furnish material and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have furnished; that for these things the city promised to pay; and, after receiving the benefit of the contract, broke it. It matters not that the promise was to pay in a manner not authorized by law. If payment cannot be made in bonds, because their issue is *ultra vires*, it would sanction rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force so far as it is lawful."

The court cites in support of the decision the case of *State Board of Agriculture v. Street Rly. Co.*, 47 Ind. 407, where the court held that—

"Although there may be a defect of power in a corporation to make a contract, yet if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has by its promises induced a party, relying on the promises and in execution of the contract, to expend money and perform his part of the contract, the corporation is liable on the contract."

We do not wish to be understood as upholding the contract upon which the plaintiff relies for any particular period of time, but we are not prepared to say that it is void; neither would we apply the rule with the same strictness to municipal corporations that should govern private corporations

organized for gain.   Courts should be governed by the conditions and circumstances surrounding municipalities, and regard them as branches of the sovereign government.   When improved methods are offered which will give to the city better facilities in the way of water, lights, and travel, or in any other manner give to its inhabitants increased safety and protection, the governing power of the city should be free to act; but until such time comes, courts should not set aside contracts which have been in part, at least, executed, unless for some good cause.   The circumstances surrounding each particular case will have to largely govern, and no fixed and determinate rule can be established.   The facts as presented by the pleadings are not sufficient, in our opinion, to authorize us to say that the contract entered into between the city and the water-works company is *ultra vires*, and should not, therefore, be enforced.

To show the limit to which the supreme court of the United States has gone in upholding franchises of a similar nature as the one under consideration, we quote the language of Mr. Justice Davis in *The Binghampton Bridge*, 3 Wall. 51:

"The purposes to be attained are generally beyond the ability of individual enterprise, and can only be accomplished through the aid of associated wealth.   This will not be risked unless privileges are given and securities furnished in an act of incorporation.   The wants of the public are often so imperative that a duty is imposed on the government to provide for them; and, as experience has proved that a state should not directly attempt to do this, it is necessary to confer on others the faculty of doing what the sovereign power is unwilling to undertake.   The legislature therefore says to public-spirited citizens: ' If you will embark with your time, money and skill in an enterprise which will accommodate the public necessities, we will grant you, for a limited period, or in perpetuity, privileges that will justify the expenditure of your money and the employment of your time and skill.'   Such a grant is a contract, with mutual considerations, and justice and good policy alike require that the protection of the law should be assured to it."

Mr. Justice VALENTINE, in the case of *Brown v. City of*

*Atchison,* 39 Kas. 54, speaking for this court, after a review of the authorities upon the question of corporate power, educed the following principles:

"Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void, in whole or in part, because of a want of power on the part of the corporation to make it or to enter into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity towards the other party, by either rescinding the contract and placing the other party *in statu quo,* or by accounting to the other party for all benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit."

As this court has already decided, the city of Columbus had the authority to make a contract for the supply of water for protection against fire; and as such contract has been entered into and carried out in part, we are not prepared to say that it is void because the authorities of the city did not possess the power to make a contract for the period of 21 years. If the contract had only been executory and no rights had accrued, we might hold otherwise. As to the ratification of irregular contracts, see authorities cited in *Water - Works Co. v. City of Columbus,* 46 Kas. 677.

1. City—contract with water company, when upheld.

It is forcefully urged by counsel for the city that, under ¶ 796 of the General Statutes of 1889, the contract with the water company is void; that a city of the second class cannot create a valid liability which requires a tax to be levied in excess of 4 per cent. The paragraph reads: "At no time shall the levy of all the city taxes of the current year for general purposes exclusive of school taxes exceed 4 per cent. of the taxable property of the city, as shown by the

assessment books of the preceding year." It appears from the pleadings in the former case that the city tax for the year 1890 was 27½ mills. This does not include the state and county tax, and we think the limitation only applies as stated to the city taxes of the current year for general purposes. Adopting this construction of the law, the position of counsel is not tenable.

2. Tax limita-
tion.

It is recommended that the demurrer to the petition be overruled.

By the Court: It is so ordered.

VALENTINE, and JOHNSTON, JJ., concurring.

HORTON, C. J.: I concur in the judgment recommended to be entered by this court, but not in all stated in the opinion.