GEORGE MANLEY v. THOMAS J. EMLEN, *as Treasurer of Atchison County, et al.*

1. CITY—*Water Contract.* In 1880 a city of the second class had the power to contract for water to be furnished to itself and its inhabitants.

2. ——— *Vested Rights—Debts—City Government.* When a city of the second class becomes a city of the first class, it retains all its vested rights with regard to its property and contracts, and remains responsible with regard to all its existing liabilities and obligations, whether upon contract or otherwise, but its mode of government is changed.

3. ——— *Government.* When a city of the second class becomes a city of the first class, it is then to be governed by the laws relating to cities of the first class.

4. ——— *Water-Works-Contract Tax, Valid.* On August 23, 1886, the mayor and council of a city of the first class, by ordinance properly passed, approved, and published, levied a tax of three mills on the dollar for general revenue purposes, and a tax of two mills on the dollar designated as a "water-works-contract tax." *Held,* That the levy of such water-works-contract tax was not invalid.

5. MACADAM TAX—*Relevy—Irregularities Cured.* On August 23, 1886, a special tax, denominated a "macadam tax," was duly levied by ordinance in a city of the first class, but it was subject to several supposed irregularities, to wit: First, a long delay from the time when the resolution was passed declaring it necessary to do the work until the tax was levied; second, an irregular estimate by the city engineer; third, no money appropriated for the work; fourth, letting the contract at an alleged excessive amount; fifth, irregularity in the notice given. But *held,* that all the supposed irregularities supposed to affect the levy of the tax in 1886 were cured by the relevy of the tax in 1887, by an ordinance duly passed, approved, and published on August 22, 1887, under §20 of the act relating to cities of the first class.

6. GUTTERING TAX, *Valid.* On August 23, 1886, a special tax denominated a "guttering tax," was duly levied by ordinance by a city of the first class to pay for a certain special guttering improvement, but the levy was subject to some supposed irregularities, as, that a certain remonstrance had been interposed, not signed by a majority of the owners of property resident in the city liable to pay taxes for such improvement, for the entire length of the improvement, nor for the length of any single block except one, which remonstrance it is claimed rendered the levy invalid. But *held,* that such remon-

strance was not sufficient to render the levy invalid, and that a relevy of the tax on August 22, 1887, cured all previous irregularities to which the prior levy may have been subject.

7. SIDEWALK TAX, *Valid.* And *further held,* that two special taxes denominated a "sidewalk tax" and a "sidewalk-repair tax," levied by ordinance by a city of the first class on August 23, 1886, and relevied by ordinance by such city on August 23, 1887, were valid.

8. TAXES—*Relevy*—*Curative Statute, Valid.* Section 20 of the first-class-city act, providing for the relevy of certain taxes or assessments, is not unconstitutional or invalid, and all persons are bound to take notice of this statute, and to know that under it all taxes or assessments coming within its provisions and not void because of some incurable irregularity, may be made valid by a relevy of the same.

*Error from Atchison District Court.*

ACTION by *Manley* and others against *Emlen,* as treasurer of Atchison county, and others, to restrain the collection of certain taxes. Judgment for defendants, on June 15, 1889. The plaintiff brings the case to this court. All the material facts appear in the opinion, filed on June 6, 1891.

*L. F. Bird,* for plaintiff in error.

*H. C. Solomon,* city attorney, for defendant in error City of Atchison.

*H. M. Jackson,* for defendants in error Friend and the Atchison Water Company.

*Frame & Bland,* for defendants in error John M. Lane & Co.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Atchison county on August 20, 1887, by George Manley against Thomas J. Emlen, as county treasurer, Charles H. Krebs, as county clerk, the city of Atchison, the Atchison Water Company, Charles Taylor, Ed. Jewett, Julius Kaaz, John Early, and John M. Lane and John Doe, partners as John M. Lane & Co., to perpetually enjoin the defendants from collecting or enforcing certain taxes against the property of the plaintiff, levied by the city of Atchison on August 23,

1886, and placed upon the tax-roll of the county for that year for collection, to wit, a water-works-contract tax, a macadam tax, a guttering tax, a sidewalk tax, and a sidewalk-repair tax. The plaintiff alleged that these taxes were all illegal and void. Afterward, L. Friend was made a party defendant in the action. Afterward, a trial was had before a referee, and judgment was finally rendered in the district court, adjudging that the water-works-contract tax was void, and that all the other taxes in dispute were valid; and the plaintiff, as plaintiff in error, has brought the case to this court for review, making all the defendants defendants in error; and two of such defendants, to wit, the Atchison Water Company and the city of Atchison, have filed a cross-petition in error.

We shall consider the water-works-contract tax first, and the principal facts relating thereto, stated very briefly, are substantially as follows: Prior to 1876, and from that time until in March, 1881, the city of Atchison was a city of the second class, when, in March, 1881, it became a city of the first class, and has remained such ever since. On March 5, 1880, a city ordinance was duly passed and afterward approved and published, providing for the erection and maintenance of water-works in the city, and giving to Sylvester Watts and to his successors and assigns the right for 25 years to furnish to the city and to its inhabitants, for compensation, good, healthful and wholesome water, upon certain terms and conditions. Within a few days thereafter an amendatory ordinance was passed, approved, and published. By these ordinances, the city was to rent and to pay for a certain number of hydrants. On April 6, 1880, an election was held by which the electors of the city of Atchison approved and ratified these ordinances by a vote of 1,309 to 84. Afterward these ordinances were accepted by Watts, and he gave bond as required by their terms. Afterward, and on March 15, 1880, Watts assigned and transferred all his rights and interests under the ordinances to the Atchison Water Company, and that company constructed the water-works, and has ever since maintained them and furnished water to the city of Atchison

42 — 46 KAS.

and to its inhabitants, in accordance with the provisions of such ordinances. In March, 1881, the city of Atchison became a city of the first class as aforesaid. On August 23, 1886, the city of Atchison levied all the taxes now in controversy, to wit, the water-works-contract tax, the macadam tax, the guttering tax, the sidewalk tax, and the sidewalk-repair tax. On December 20, 1886, the plaintiff, George Manley, tendered to the county treasurer all taxes due against him or his property in Atchison county except the aforesaid disputed taxes, and has kept the tender good. On August 20, 1887, this action was commenced by the plaintiff, George Manley, against the county treasurer and others, as aforesaid, to perpetually enjoin them from collecting or enforcing the aforesaid disputed taxes, the plaintiff claiming that they were void. On August 22 and 23, 1887, the city of Atchison re-levied all the foregoing disputed special-improvement taxes; but did not relevy the water-works-contract tax. Afterward all the defendants answered. Afterward, and on March 11, 1889, the case came on for trial, and L. Friend was then made a party defendant, and he duly answered. The case was then tried before Seneca Heath, who had previously been appointed a referee for such case. On April 18, 1889, the referee made his report, making voluminous special findings of fact, and also stating his conclusions of law separately, and to the effect that all the taxes except the water-works-contract tax were valid, and that that tax was invalid. At that time and afterward various motions and objections were presented to the court and heard and acted upon; but the court finally, and on June 15, 1889, approved the report of the referee and rendered judgment substantially in accordance with the referee's conclusions of law.

Just why the water-works-contract tax is not valid, it is difficult to understand. In 1880, when the city of Atchison, which was then a city of the second class, provided by ordinance for giving to Sylvester Watts, and to his successors and assigns, the right to furnish water to the city of Atchison and

1. Power to contract for water. to its inhabitants for compensation, and upon certain terms and conditions, the city certainly had the power to do so and to make a valid contract with Watts for that purpose. (Gen. Stat. of 1889, ¶¶ 787, 817, 1401, 1402, 7185–7190; *Wood v. Water-Works Co.*, 33 Kas. 590, 597; *Water-Works Co. v. City of Burlington*, 43 id. 725, 728; Dill. Mun. Corp., 4th ed., §§ 146, 443, and note, 568, last part, and cases cited under all these sections; 15 Am. & Eng. Encyc. of Law, 1115–1118, and cases there cited.) When the city of Atchison, in 1881, became a city of the first class, it retained all its vested rights with regard to its 2. Vested rights; debts; city government. property and its contracts, and remained responsible with regard to all its existing liabilities and obligations, whether upon contract or otherwise, (First-Class-City Act, §§ 119, 120, 121,) but its mode of government was changed. It was then a city of the first class, and 3. City becomes of first class; government. was to be governed by the laws relating to cities of the first class, and was no longer to be governed by the laws relating to cities of the second class. In the case of *Simpson v. Kansas City*, ante, p. 438, it was said as follows:

"After these enumerated cities were consolidated and formed Kansas City, Kansas, that city became one of the first class, and is to be governed in all respects by the laws regulating cities of the first class."

It therefore follows that the contract between the city of Atchison and Watts, for the furnishing of water by Watts and his successors and assigns to the city and to its inhabitants, and the paying therefor, and for the rent of certain hydrants by the city, was valid in 1880 under the laws relating to cities of the second class; that it remained valid when Atchison became a city of the first class; that it was valid in 1886, when the present water-works-contract tax was levied, and that such levy was valid when made, if it was properly made under the laws relating to cities of the first class. Was it so made? The plaintiff claims not. He claims that the water-works-contract tax must necessarily be a part of the tax levied "for general-revenue purposes," as mentioned in subdivision 1 of

§ 11 of the first-class-city act. But suppose it is: would that make any difference? Under that subdivision the city may levy not to exceed six mills on the dollar in any one year for general-revenue purposes, and taking this two-mills tax that was levied as a water-works-contract tax and all that was levied that year for general-revenue purposes, which was only three mills on the dollar, and the whole of these two taxes in the aggregate would amount to only five mills on the dollar; and all these taxes were levied at one and the same time, to wit, on August 23, 1886. There is no room, therefore, even to claim that the tax of three mills for general-revenue purposes was levied first, and that the mayor and council thereby and at that time so exhausted their power that they could not afterward levy the water-works-contract tax, if such tax should be called a tax "for general-revenue purposes;" for, as before stated, all these taxes were levied at one and the same time. But even if they had been levied at different times, would that make any difference? Could the mayor and council so exhaust their power by levying at one time a portion of the six-mills tax for general-revenue purposes that they could not afterward, if they found it necessary, levy the remainder of such six-mills tax for general-revenue purposes? It is not necessary, however, to answer this question, as § 35 of the first-class-city act gives express authority to the mayor and council of cities of the first class to levy a two-mills tax for water-works, and the authority thus given, we think, is conclusive in the present case. The city of Atchison had been a city of the first class for more than five years before this two-mills-water-works-contract tax for the year 1886 was levied, and before any step was taken toward its levy; and hence, of course, the city was not governed by the statutes relating to cities of the second class, but was governed by the statutes relating to cities of the first class. But even if the city had remained a city of the second class, and if the tax

4. Contract for water; valid tax.

had been levied under the laws relating to cities of the second class, it would probably still be a valid tax. We think the water-works-contract tax is valid.

As before stated, all the taxes now in dispute were orig-
inally levied at the same time, and on August 23, 1886, but
the incidental proceedings affecting each tax were respectively
different. We shall now proceed to consider the macadam tax.
On December 6, 1883, the mayor and council of the city of
Atchison passed a resolution declaring that it was necessary to
macadamize Commercial street from the west side of Eighth
street to the east side of Thirteenth street. Various proceed-
ings were afterward had, which delayed the work so that the
tax for the payment of the work could not well be levied prior
to the time when it was levied. The first estimate of the cost
of the work made by the city engineer, for instance, was ir-
regular in not being sworn to, and for that or some other rea-
son the first award of the work to one of the bidders proved
abortive. Afterward, the city engineer made another estimate
in due form and under oath, and the work was again adver-
tised and let to a responsible bidder, who entered into contract,
gave bonds, etc., and performed the work; and to pay for
such work the present macadam tax was afterward levied.
Various objections have been and are now urged against the
validity of this macadam tax. First, it is claimed that the
long delay from the time of the passage of the resolution de-
claring it necessary to macadamize Commercial street down to
the time when the tax was finally levied, rendered the tax
invalid. Second, it is claimed that under § 22 of the first-
class-city act, the estimate of the cost of the work is the first
thing to be done in taking steps toward the improvement of a
street, and that, as the passage of the resolution was the first
thing that was actually done in the present case, and the esti-
mate of the cost of the work was afterward made, the tax
must necessarily be invalid. Third, it is also claimed that,
under said § 22, an appropriation of money must be made,
and the money set apart for the payment for the work, before
any work is done, which was not done in the present case,
and, indeed, could not well be done in any case like the pres-
ent. Fourth, it is claimed that the contract price at which
the work was let was in excess of the estimated cost, which is

not shown to be true, and the findings of the referee show otherwise. Fifth, it is further claimed that the notice provided for by § 13 of the first-class-city act to be given of the special session of the mayor and council to hear complaints as to the appraisements of property was given by the city clerk in the official paper of the city, and not by the mayor in such paper. The notice was in fact ordered by the mayor and council to be given in the official paper, and it was so given, but it was signed only by the city clerk. The statute requires that the notice "shall be given by the mayor in the official paper of the city."

Several objections are also urged against the guttering tax. A remonstrance was filed with the city clerk, under § 14 of the first-class-city act, protesting against the improvement. The guttering was to be done on both sides of Commercial street for five blocks in length, to wit, from the west side of Eighth street to the east side of Thirteenth street. The remonstrance was not signed by a majority of the owners of property resident in the city liable to pay taxes for the improvement for the entire length of the improvement, nor for the length of any single block, except the block between Eleventh and Twelfth streets; and with reference to such block, the remonstrance was signed by Mrs. M. A. Baldwin, who was the only resident of the city who owned property liable to be taxed between such streets. We would think the improvement was a single and continuous improvement, and therefore that the remonstrance was insufficient to stop the work, or to stop any of the proceedings necessary to its accomplishment. It is also claimed that the estimate of the cost of the work, made by the city engineer, was not in sufficient detail, but we are inclined to think it was. The same objection with reference to this tax is urged against the notice of the special meeting of the mayor and council to hear complaints concerning the appraisement as has been urged with reference to the macadam tax. Some of the other objections made to the other taxes are also urged against the sidewalk tax and the sidewalk-repair tax.

It is perhaps unnecessary for us to decide whether the aforesaid disputed special-improvement taxes, as they were first levied on August 23, 1886, were then, or are now, aside from their relevy in 1887, valid or invalid, for they were all relevied on August 22 and 23, 1887. The real question is whether such taxes, under the two levies made in 1886 and 1887, are of sufficient validity that they may now be enforced. It will be noticed that the objections to them are of a purely technical character, and merely for irregularities. The principal objection is the want of a technical notice with regard to the proceedings upon which they are founded. The plaintiff, however, who was a non-resident of Kansas, had at all times, through his son and agent, who resided in Atchison, and who had the actual control and management of all his father's property in Atchison, actual notice of all such proceedings. As to the guttering tax, the son signed the aforesaid protest for his father; and another agent of the plaintiff, who had full notice of all the proceedings, gave notice to the several contractors respectively, "that the plaintiff would contest any levies and assessments that might be made against his property for payment for work that might be done by them under their several contracts, and that they would do all work under their several contracts at their peril." It does not appear, however, that this agent ever gave any notice to any one of the contractors, or to anyone else, before the work on any of the various improvements was completed, of any irregularity in any of the proceedings connected with any of such improvements, or that it was claimed by the plaintiff that any irregularity, fraud or illegality existed or occurred at any time in connection with any of the proceedings. Besides, proper notices were in fact given in all cases, regular in all respects, except that the notices were signed only by the city clerk and not by the mayor. The notices, however, were first ordered to be given by the mayor and council, and they were in fact given as ordered, and would have been perfectly regular if they had been signed by the mayor instead of by the city clerk. But were they not "given by the mayor" by fair intendment?

5, 6, 7. Macadam, guttering and sidewalk taxes, valid. But, taking all the irregularities together, they were not sufficient to render the taxes as relevied in 1887 invalid. The statute authorizing a relevy of taxes in cases like the present is § 20 of the first-class-city act as enacted in 1881, (Laws of 1881, ch. 37, § 20,) and it reads as follows:

"SEC. 20. In case the corporate authorities have attempted to levy any taxes or assessments for improvement, or for the payment of any bonds or other evidence of debt, which taxes or assessments may have been informal, for the want of sufficient authority, or other cause, the council of such city, at the time fixed for levying general taxes, shall relevy and reassess any such assessments or taxes, in the manner provided in this act."

We think such a statute as this is valid and binding. (*Newman v City of Emporia*, 41 Kas. 583. See, also, in this connection, the cases of *City of Emporia v. Norton*, 13 id. 569; *Mason v. Spencer*, 35 id. 512.) All persons are at all times bound to take notice of a public statute, and what may be done under it. They are bound to take notice of the provisions of said § 20, and to know that under it all taxes or assessments coming within its provisions, and not void because of some incurable irregularity, may be made valid by a relevy of the same. And further with regard to notice: The taxes levied in 1886 were levied by an ordinance of the city, regularly passed by the city council, approved by the mayor, and published in the official paper of the city, and of this ordinance all persons are bound to take notice; and this is also true with respect to the relevy of the taxes of 1887. This relevy was also consummated by city ordinances regularly passed, approved and published, all in August, 1887. But, before the taxes as relevied could become a fixed lien or charge upon the plaintiff's property, they would all have to be placed upon the tax-rolls of the county by the county clerk, and the tax-rolls would then have to be placed in the hands of the county treasurer; and the taxes would not even then become a fixed charge

8. Taxes; relevy; curative statute, valid.

or lien upon the plaintiff's property until November 1, 1887. The plaintiff, as well as all others, was required to take notice of these ordinances; and after their taking effect, and before the taxes could affect his property, he had ample time within which to commence an action or other proceeding to defeat or avoid such taxes. A notice given by ordinance is held to be valid and sufficient in the case of *Newman v. City of Emporia*, supra. The only difference necessary to mention between the curative statute cited in the Newman case and the one relied on in the present case is, that the curative statute cited in the Newman case was enacted between the time of the first levy and the time of the second levy, while the curative statute in the present case was enacted and in force a long time prior to either levy. This, however, we think, cannot be considered as a substantial difference. Both are general statutes, one applying to all cities of the second class and the other to all cities of the first class, both to remain in force for all time, unless modified or repealed by subsequent legislation; and neither is in any respect a special or local statute. Indeed, neither could be a special or local statute and be valid under §§ 1 and 5 of article 12 of the constitution. Special legislation is not permissible under our constitution with respect to municipal corporations.

The judgment of the court below will be modified as follows: As to the water-works-contract tax, it will be reversed; and as to all the other taxes, it will be affirmed.

All the Justices concurring.