FERGUS FALLS WATER CO. v. CITY OF FERGUS FALLS.

(Circuit Court, D. Minnesota, Sixth Division. February 4, 1895.)

1. CITIES—CONTRACTS FOR WATER.
Where a city with a population of 5,000 and an assessed valuation of property of two and a quarter millions of dollars contracts with a person giving him the exclusive privilege of laying water mains in the city for 30 years, and providing that he shall furnish the city with 50 fire hydrants, for each of which it shall pay him a rent of $80 per year for the 30 years, with a stipulation that, at the end of 10 years, it may, at its option, buy the waterworks, at a price commensurate with the productive value thereof, the contract will not, after the city has enjoyed the benefit of it for over 10 years, be held so unreasonably oppressive or contrary to public policy as to be void.

2. SAME.
Under the power given a city by its charter to contract for waterworks, it has power to make necessary and proper arrangements to provide for payment of the same.

Action by the Fergus Falls Water Company against the city of Fergus Falls.

Frank W. Booth, for plaintiff.
Mason & Hilton, for defendant.

NELSON, District Judge. This is an action brought by plaintiff against the city of Fergus Falls to recover the sum of about $5,600, with interest, on account of rent for water supplied to defendant under a certain contract embodied in one of the city ordinances. There is no contention whatever as to the facts, and a stipulation in writing was filed that the case should be heard and decided by the court, without a jury.

The agreed facts are as follows:

March 3, 1881, the legislature of the state of Minnesota granted to defendant a charter, the provisions of which, material to this case, are as follows (Sp. Laws 1883, p. 1):

Chapter 4, § 5: "The city council shall have power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the

government and good order of the city, * * * and for these purposes the said city council shall have authority by such ordinances:"

Subsection 45: "To contract with any person, persons or corporations for the lighting of such streets or parts of streets and public places as the city shall deem proper, for the convenience and safety of the inhabitants, and also for supplying the city with water."

Subsection 47: "The city council may permit any parties or corporation to lay water mains and pipes in any and all streets and alleys, highways and public grounds of the city, and shall regulate the position of the same, so that they shall not obstruct or interfere with the common sewers or with the proper drainage of the city."

Chapter 7, § 3: "The city council shall have power to purchase, keep and maintain fire engines and other fire apparatus, and to build and maintain engine houses, hose houses and such other buildings as may be necessary or convenient. * * *

Section 4: "The city may maintain the present volunteer fire companies and authorize the organization of such other volunteer companies as in its discretion may be necessary or expedient."

Section 7: "The city council shall have power and authority to make by ordinance all needful rules for the government of the fire department, and for the protection and use of all engine houses, telegraph lines, and other property and apparatus pertaining thereto, and of the water works, mains, pipes, cisterns, and hydrants in said city as used in connection with said department. * * *"

Chapter 8, § 1: "The city council shall have the care, supervision and control of all highways, streets, alleys, public squares and grounds within the limits of the city, and may lay out and open new streets and alleys, and extend, widen, straighten and may build, maintain, repair bridges across streams and railway tracks, may provide for the pavement of gutters or the roadbeds of any streets or alley."

On April 19, 1883, Ordinance No. 18, relative to gas and water works, was passed by the common council of defendant, certain portions of which, material to this case, are set out as follows:

"Ordinance XVIII.

"Gas Works and Water Works.

"(Passed April 19, 1883.)

"Section 1. In consideration of the benefits that will result to the city of Fergus Falls and its inhabitants from the erection and operation of gas and water works, there is hereby granted unto Carroll E. Gray, his associates or assigns, the privilege of establishing, maintaining and operating gas and water works, and the construction of pipe lines, open or closed stand pipes, reservoirs, conduits, gas holders, necessary and sufficient in size; also the laying of mains, pipes, and the placing of fire hydrants and lamp posts in and along the streets, avenues, alleys and public grounds of the city of Fergus Falls, county of Otter Tail, state of Minnesota, as the same now exist or may hereafter be extended, for the supply of gas or water suitable for domestic and other purposes, for and during the term of thirty (30) years from and after the passage of this ordinance. The said city of Fergus Falls shall and will abstain, for the period of said thirty (30) years, from and after the passage of this ordinance, from granting to any party or parties other than the said Carroll E. Gray, his associates or assigns, the right or privilege to lay water pipes in any of the streets, avenues, alleys, public grounds or sidewalks or furnish water to said city or its inhabitants or any portion thereof, and to abstain from so doing for and on its own behalf; and said city will also abstain for a period of ten (10) years, from and after the passage of this ordinance, from granting to any party or parties, other than the said Carroll E. Gray, his associates or assigns, the right or privilege to lay gas pipes in any of the streets, avenues, alleys and public grounds or sidewalks, or furnish gas to said city or its inhabitants or any portion thereof, and the said city will likewise abstain from so doing for and on its own behalf: provided, however, that

at the expiration of said thirty (30) years, should the city refuse to grant to the said Carroll E. Gray, his associates or assigns, the right to continue and maintain said works for another term of twenty (20) years in and upon the public ground and streets of the said city, and to supply the said city and the inhabitants thereof with gas or water on reasonable terms, then and in such case the city shall purchase from said Carroll E. Gray, his associates or assigns, said gas works or water works, or either of them, and the property connected therewith, at a fair valuation, as provided for in section ten (10)."

"Sec. 4. * * * The public fire hydrants rented by said city are not for the private use of its citizens or for street sprinkling purposes, but shall be used only for fire protection purposes, fire company practice, and for flushing gutters through hose. * * *.

"Sec. 5. In further consideration of the benefits that will accrue to the city of Fergus Falls and its inhabitants from the erection and operation of water works, and for the better protection of the city against fire, the city of Fergus Falls hereby agrees and binds itself to rent, and does hereby rent, from said Carroll E. Gray, his associates or assigns, fifty (50) public fire hydrants of the class and character hereinbefore described, to be located on the aforesaid six (6) miles of pipes, for and during the term of thirty (30) years from and after the completion of the works, and agrees to locate the same promptly along the lines of the street mains, on written demand of the said Carroll E. Gray, his associates or assigns, and upon submission by the said grantees to said city of a plan of the location of the said street mains. The said city agrees to use said hydrants carefully, protecting them from molestation or damage by the employees or officers of said city, and pay said Carroll E. Gray, his associates or assigns, for any injury which may result from misuse or abuse by the servants or employees of the city. The rental to be paid for the use of said hydrants shall be eighty ($80) dollars each per annum, payable to the said Carroll E. Gray, his associates or assigns, or to his or their order, and the payment shall be made quarter yearly therefor, pro rata, viz.: On January first, April first, July first and October first of each and every year during the term of this contract, or until said works are purchased by said city as hereinafter provided for. The said hydrant rental to begin from the dates when each of such hydrants shall be put in successful operation. For any additional fire hydrants, the city may thereafter require and locate the annual rental to be paid by the city shall be seventy ($70) dollars per hydrant for the next fifty (50) hydrants, and all after that number fifty ($50) dollars per hydrant.

"Sec. 6. In the event that said Carroll E. Gray, his associates or assigns, after said works shall have been in successful operation, suffer a suspension of a supply of good and wholesome water, thereby causing an insufficiency for domestic and other purposes and for a period exceeding sixty (60) days, then in that event said Carroll E. Gray, his associates or assigns, shall forfeit all exclusive franchises herein granted, unless such suspension shall have been caused by the act of God, by public enemies or unavoidable accident, and during any such failure of supply, all hydrant rental shall be suspended."

"Sec. 10. The city of Fergus Falls shall have the option and privilege at any time after the expiration of ten (10) years from the passage of this ordinance, or at the expiration of five or ten years thereafter, on giving six (6) months prior notice in writing to the said Carroll E. Gray, his associates or assigns, to purchase said gas or water works or either of them, and all property connected therewith, and necessary for the effective operation of the same at a fair valuation to be ascertained as follows, to wit: In the event said city and Carroll E. Gray, his associates or assigns, fail to agree upon the price, three (3) disinterested persons of good intelligence not residents of the county of Otter Tail shall be chosen and sworn to determine the value, one to be appointed by said city, one by said grantees, and the third by the two so appointed. When said three persons shall have been so chosen, and before they determine said value, the said city and the said grantees shall each at their option have the right to call nonresident experts not exceeding three (3) in behalf of each party, to give testimony under oath before said three appraisers as to such value. The said three appraisers shall then proceed to determine such value, and in so doing they shall take into consideration the

productive value of said gas or water works, rights, privileges and property. When the three or their majority shall have made an award in writing, ten per centum shall be added to the amount thereof, and the said city shall then have the option of refusing to purchase, or of paying to the said Carroll E. Gray, his associates or assigns, within six (6) months of the date of said award the amount thereof in cash and the said ten per centum additional thereon. If the said city shall refuse to purchase as aforesaid, it shall pay the necessary expense incurred, in making said award; in case the city buys, the expense of said award to be equally borne.

"Sec. 11. * * * The said Carroll E. Gray, his associates or assigns, shall also furnish, free of rent to the city, water for the use of the city hall and city offices, calaboose or jail, and to the city engine houses and fire department offices, also to the central high school."

"Sec. 13. Said Carroll E. Gray, his associates or assigns, shall within thirty (30) days from the passage and publication of this ordinance, file with the city clerk a written acceptance of the terms, obligations and conditions herein set forth, and after the date of the filing of said acceptance this ordinance shall be the measure of the rights and liabilities of said city and of said Carroll E. Gray, his associates or assigns, and shall constitute a contract. Said Carroll E. Gray, his associates or assigns, shall within thirty (30) days from such acceptance commence said gas or water works, and have said water works in operation and substantially completed as herein contemplated by the first day of December, 1883. In the event that said Carroll E. Gray, his associates or assigns, shall fail to have said gas works in operation the first day of December, 1883, then they shall forfeit all exclusive rights and franchises pertaining to the erection and operation of gas works herein conferred, unless longer time for such completion be granted by said city. In the event that said Carroll E. Gray, his associates or assigns, shall fail to have said water works in operation by the first day of December, 1883, then they shall forfeit all exclusive rights and franchises pertaining to the erection and operation of water works herein conferred, unless longer time for such completion be granted by said city.

"Sec. 14. All ordinances and parts of ordinances inconsistent with and repugnant to the provisions of this ordinance are hereby repealed, and this ordinance shall take effect and be in force from and after its passage and publication."

The water works were completed by the 1st of December, 1883, and have been in constant use ever since. On the 30th day of August, 1893, the city council duly passed, and the mayor approved, the following resolution:

"It is hereby resolved and determined that the contract for water supply through fire hydrants for fire protection, heretofore recognized as existing between the city of Fergus Falls and the Fergus Falls Water Company, under the provisions of Ordinance No. 18 of said city, be, and the same is hereby, declared to be null and void, and is hereby canceled. And it is hereby determined that the city will no longer take water from the said water company under the provisions of said Ordinance No. 18."

On the same day the city council passed, and the mayor approved, the following resolution:

"Resolved, that the city will take from the Fergus Falls Water Company for fire protection purposes from twenty-five hydrants, said hydrants to be situated as the council may hereafter designate. And it is hereby further determined that the city will pay the said water company, at such hydrants and such other hydrants as the city may from time to time engage to use, the sum of sixty dollars per hydrant per year; the said hydrant rents to be paid quarterly, at the end of each quarter of the year from the commencement of the contract. And the committee on water works are hereby instructed to so contract with the said water company for a water supply from the hydrants as hereafter designated by the city council."

Plaintiff refused, and still refuses, to accept the last-named proposition. A demurrer was interposed to the complaint, claiming that this court had no judisdiction, because no federal question was involved in the case. The demurrer was overruled by Judge Thomas, and will not be considered by me.

It is admitted that all rents have been paid under the provisions of the ordinance up to September 1, 1893, and no later; and this suit is brought to enforce the payment of rent which has accrued since that date. Defendant resists payment of rent on the ground that the contract embodied in the ordinance is illegal, unreasonable, oppressive, contrary to public policy, and that the common council had no authority to enact the ordinance in question; and, further, that, at the time of the passage of the ordinance, there was no revenue assessed, or funds of the city available, wherewith to pay the rent in question.

It is true that the charter merely gives defendant authority to contract with any person, persons, or corporation for supplying the city with water; but, in order to properly construe that section, we must read it in connection with other portions of the charter which may be applicable thereto. We find that power and authority are given the council to permit any parties or corporation to lay water mains and pipes in any and all streets and alleys, highways, and public grounds of the city, and the council is given the care, supervision, and control of all the highways, streets, alleys, public squares, and grounds within the limits of the city. The council also has power and authority to make all needful rules for the government of the fire department, and "may continue the present volunteer fire companies, and authorize the organization of such other volunteer companies as in its discretion may be necessary or expedient." Under the authority thus conferred upon it by the charter, express and implied, the city council, on the 19th day of April, 1883, enacted and passed the ordinance in question, which on the 30th day of August, 1893, it declared null and void, and refuses to pay rent thereunder. In enacting this ordinance the council did nothing prohibited by the charter, and the question is: Did it exceed its power in such a manner that, under all circumstances of the case, this court must say, as a matter of law, that the ordinance is void, and cannot be enforced? What are these circumstances? It appears that in April, 1883, the defendant, with a population of about 5,000, and an assessed valuation of property of $2,231,201, being desirous to be provided with water works, contracted for the same under this ordinance, and thereby induced the expenditure of a large amount of money on the part of plaintiff's assignors. The works were completed in accordance with the contract, and for nearly 10 years thereafter defendant has used and had the benefit of said water works for fire and other purposes, and has, during all that time, paid for the same, without objection, according to the terms of the contract. On August 30, 1893 (the population at this time not exceeding 4,000, and the assessed valuation having shrunk to $821,773), the common council declared this ordinance void, and refused to be bound any longer by its terms. On the same day, however, they passed another

ordinance, whereby they offered to take from the plaintiff, for fire protection purposes, 25 hydrants, at the rate of $60 each, and pay for the same quarterly.

It is stipulated that when fires have occurred in the city since August 30, 1883, some of the hydrants have been used by the volunteer fire companies of the city of Fergus Falls, but that such action on part of these companies was without any action or consent of defendant. It appears that these fire companies are under the control of the defendant; that no action was taken by the council forbidding the use of the hydrants for such purpose, and the city certainly had the benefit of them. Defendant claims that the ordinance granting this franchise to Gray and his assigns for 30 years, whereby defendant was bound to pay for 50 hydrants, at $80 each, during all that time, is void, for the reason that the city council had no authority to bind the defendant for such a period in advance. It must not be forgotten that 10 years of that time have elapsed; that the contract has but 20 years to run, and is now considerably modified. It is no longer an exclusive one, for the time has been reached when the defendant can purchase the works, not at the cost price or any arbitrary figure, but at a price to be agreed upon by three impartial persons, taking "into consideration the productive value of said water works, rights, privileges, and property." There is no claim of fraud, nor that the water works are useless or unnecessary. On the contrary, defendant by its second ordinance, of August 30, 1893, admits their usefulness and necessity. It is evident that the passage of the first ordinance, of August 30, 1893, was brought about by the fact that instead of growing, as was expected, the city had decreased in population and assessable valuation. The law does not favor the idea that a man shall abide by a contract when it is advantageous to him, and repudiate it when it becomes irksome. It is well settled that time and even exclusive contracts may be made by city authorities for the purpose of inducing persons to embark capital in such enterprises as water or gas works, and common sense and experience teach us that without such provisions capital would not be invested. The only question is, is this ordinance so unreasonable, so oppressive, so contrary to public policy that the law will interfere and declare it void? I am of opinion that, if this question had been raised at the outset, it is doubtful whether the city council had authority to give an exclusive contract of this character to any person for the purpose stated; but as plaintiff's assignor, relying upon the ordinance, in good faith invested a large sum of money in these works, and the city has for 10 years enjoyed the benefits thereof without objection or complaint, and has now the opportunity of purchasing the works at a reasonable valuation, commensurate with the productive value thereof, I do not consider that the ordinance is so unreasonable, oppressive, or contrary to public policy as to be void. Where a contract is sought to be avoided on the grounds above stated, it must be treated as a nullity by the party seeking to avoid it, and must be repudiated in toto. He cannot repudiate it, and at the same time reap any of the benefits derived from it, as the defendant has attempted to do.

As to the other defense, I do not think it can prevail. When the city received power from the legislature to contract for water works, the power to make necessary and proper arrangements to provide for the payment for the same was also granted. I think the plaintiff is entitled to recover the full amount claimed for rent, and judgment will be entered accordingly.