### WICHITA WATER CO. v. CITY OF WICHITA.

(District Court, D. Kansas, Second Division. March 31, 1916.)

#### No. 55-N.

1. MUNICIPAL CORPORATIONS ⬥271—CONTRACTS—GOVERNMENTAL FUNCTIONS.

The enactment of an ordinance relating to the procurement by a city of a supply of water for its own use and for its inhabitants, together with the price to be paid, involves the exercise of proprietary and not governmental powers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 726; Dec. Dig. ⬥271.]

2. MUNICIPAL CORPORATIONS ⬥271—POWERS—STATUTES.

The power of a municipality to contract for the procurement of a water supply must be found in the statute law of the state, either expressly or by implication conferring such power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 726; Dec. Dig. ⬥271.]

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. WATERS AND WATER COURSES ☞203(11)—PUBLIC SUPPLY—CONTRACTS—
ACCEPTANCE OF ORDINANCE—RATES.

Where an ordinance authorizing construction of a water system for
a city and the charging of fixed rates for a period of time was accepted
by the grantee, the municipality cannot during the existence of the con-
tract reduce the rates to be charged.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§§ 290, 292, 294; Dec. Dig. ☞203(11).]

4. WATERS AND WATER COURSES ☞200(2)—PUBLIC SUPPLY—CONTRACTS—
RATIFICATION.

Where a municipality, possessing power to contract for the supplying
of itself and its inhabitants with water, in entering into a contract de-
fectively exercised its powers, the making of a subsequent contract modi-
fying the original one is, where the municipality duly exercised its pow-
ers, a ratification of the original one.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 274; Dec. Dig. ☞200(2).]

5. WATERS AND WATER COURSES ☞200(2)—PUBLIC SUPPLY—CONTRACTS—
RATIFICATION.

Where a municipality was without authority to contract for the supply-
ing of itself and its inhabitants with water, the subsequent execution
of an agreement modifying the original one did not work a ratification,
validating the original agreement.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 274; Dec. Dig. ☞200(2).]

6. WATERS AND WATER COURSES ☞200(1)—PUBLIC SUPPLY—CONTRACT—VA-
LIDITY.

Gen. St. Kan. 1889, § 7185, authorized cities of the first, second, and
third classes to contract for and procure waterworks, to be constructed
for the purpose of supplying the inhabitants of the city with water for
domestic use, the extinguishment of fire, and other purposes. The stat-
utes contained no limitation as to the duration of such contracts. A mu-
nicipality entered into a contract for the construction of a waterworks
system, fixing the rates which it should charge and agreeing that they
should continue for 40 years. After the expiration of a little more than
half that time the assignee of the grantee agreed to reduce the rates
charged the municipality and such proposal was accepted. *Held,* that
there was a valid contract for the supplying of water for the inhabitants
for such period, and the municipality could not during the life of the
contract reduce the rates.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent.
Dig. § 274; Dec. Dig. ☞200(1).]

7. CONSTITUTIONAL LAW ☞135—IMPAIRMENT OF OBLIGATION OF CONTRACT—
STATUTES.

Where a municipality, under Gen. St. Kan. 1889, § 7185, contracted for
supplying itself and inhabitants with water for 40 years at fixed rates,
the municipality cannot subsequently reduce the rates before the expira-
tion of the contract, in accordance with Gen. St. Kan. 1909, § 1031, and
Laws Kan. 1911, c. 238, § 33, authorizing municipalities to fix rates, for
such exercise of the power would work an impairment of the obligation
of the contract.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 380–
387; Dec. Dig. ☞135.]

In Equity. Bill by the Wichita Water Company against the City of
Wichita. Decree for complainant, granting interlocutory injunction.

David Smyth and J. W. Smyth, both of Wichita, Kan., for com-
plainant.

Dale, Amidon & Madalene, of Wichita, Kan., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

POLLOCK, District Judge. This case as now presented raises but a single question, namely, the power of the city, by ordinance, to regulate the rates charged by plaintiff for water service furnished by it in the city. If the city had bound itself by valid existing contracts to permit the water company to charge fixed and established rates, then of necessity it had no power during the life of such contracts to require the plaintiff to charge and receive less rates, and in consequence the ordinances attempting to establish rates less than the contract provides are beyond the power of the city to enact and void. If it had not, the right of the city to establish by ordinance any schedule of rates not confiscatory of the property rights of plaintiff must be conceded. The rights of the parties in this regard are found to reside in two instruments in writing:

First. An ordinance of the city, No. 266, published November 22, 1882, granting to J. A. Jones, his successors and assigns, the right to occupy the streets, alleys, and other public places of the city in the construction, operation, and maintenance of a system of waterworks to furnish the city and its inhabitants with water for a period of 40 years from said date, which ordinance was duly accepted by the grantee named therein, and the works were erected and since maintained and operated. Original Ordinance No. 266, omitting schedule rates, provides:

"An ordinance to provide for a system of waterworks for the city of Wichita, for domestic, sanitary and other purposes.

"Be it ordained by the mayor and councilmen of the city of Wichita:

"*Right of Way.* Section 1. That the right of way along the streets and alleys, and the privilege to construct, operate and maintain a system of waterworks in the corporate limits of the city of Wichita, for supplying the city and citizens with water for domestic and sanitary purposes, as well as for the better protection of the city against disaster from fires, be granted to J. A. Jones, of the city of St. Louis, and state of Missouri, his associates, successors, or assigns, for the term of forty years from the passage of this ordinance.

"*Term of Franchise.* Sec. 2. That the right of way as held by the city of Wichita, be granted to J. A. Jones, his associates, successors, or assigns, for the term of forty years, to lay pipes in any and all streets, lanes, alleys, roads, or other public places within the corporate limits and to extend the pipes, and to place, construct and erect hydrants, fountains, conduits, or such other useful or ornamental structures as may be necessary for the successful operation of the works: Provided, the same shall not interfere with the general use of said streets, alleys and lanes.

"*Requirement and Arrangement of Buildings and Machinery.* Sec. 3. That the general plan of the works shall be, an engine house built of either brick or stone, not less than forty by sixty feet, and divided into three apartments, to be known as pump, boiler and fuel rooms; two pumps capable of pumping 1,500,000 gallons of water every twenty-four hours, and so arranged that they can be run either separately, or together, two boilers so arranged that they can be fired either separately, or together, and of sufficient size to make with easy firing ample steam to supply the pumping machinery; the pipe system to be not less than eight miles of main and to vary in size from fourteen inches to six inches in diameter; the hydrants to be what is commonly known as six-inch post and two and one-half inch double discharge with frost jacket. with six-inch connection. (As amended by Ordinance 268 as amended by Ordinance 509, published January 24, 1888.)

"*Capacity of Works.* Sec. 4. The works, when completed, shall be capable of throwing six streams through fifty feet of two and one-half inch rubber

234 F.—27

hose and one-inch ring nozzle, eighty feet high, from any six hydrants the city council may elect.

"*Sixty Hydrants Rented by City.* Sec. 5. That, in consideration of the benefit that will accrue to the city of Wichita by the construction of a system of waterworks, the city agrees to rent, and does hereby rent, from the said J. A. Jones, or assigns, for and during the term of twenty-one years, sixty double discharge hydrants, at an annual rental of four thousand dollars per annum, payable quarterly, namely: January 1, April 1, July 1, and October 1, of each and every year, with legal rate of interest after maturity. That said hydrants be located at such places as the mayor and city council may determine.

"*Rental for Additional Hydrants.* Sec. 6. That the city shall have the right to rent, at any time during the term of this franchise, additional hydrants at the rate of fifty dollars each per annum; all hydrant rental payable as provided for in section 5 of this ordinance.

"*Use of Hydrants.* Sec. 7. That the hydrants, when erected, be used exclusively for the extinguishment of fires, necessary drill and practice of hose companies and the flushing and washing of the city sewers and gutters; but in all washing and flushing of city sewers and gutters there shall not be more than two hydrants opened at any one time, nor oftener than twice in any one week, nor longer than two hours at any one time, nor discharge through any orifice greater than one and one-half inches.

"*Pipe Extensions.* Sec. 8. That the said Jones, or assigns, shall extend the mains to any part of the city when requested so to do by resolution of the city council: Provided, however, that there shall be upon each street, lane, alley, road or other public places, six buildings for every six hundred feet of pipe extension, the occupants of which shall agree, in writing, to use and pay for water at established rates as soon as the pipes are laid, and the city to rent one hydrant for every six hundred feet of pipe extension; provided, that no pipe shall be smaller than six inches in diameter.

"*City to Have Right of Purchase—Valuation—Terms of Payment.* Sec. 9. That the city shall have the right to purchase the works ten years after completion, and failing to purchase at the expiration of ten years, then every five years thereafter, at appraised valuation of three disinterested parties, said appraisers to be selected in the following manner, namely: The city to select one, the said Jones, or assigns, to select one, and the two thus chosen to select a third. When these three shall be chosen, they shall be duly sworn, and they shall proceed to declare the valuation of the franchise, works and choses in action, by examining not exceeding three experts on behalf of each party, and when they, or a majority of them, have declared the valuation in writing, the city shall pay the same within three months thereafter; and in case there should be no hydrant rental existing at the time of purchase, then the number of hydrants erected shall be taken into consideration at the rates provided for in sections five and six, and the city in this purchase shall assume all the obligations of the water company, the lawful quittance for which shall be secured by said Jones, or assigns, as a part payment of the declared valuation, and the said Jones, or assigns, shall accept obligations of the city of Wichita, legally issued, at legal rates of interest, not exceeding twenty annual payments, for the balance due upon the declared valuation, after deducting the obligations of the water company.

"*Notice of Intention to Purchase.* Sec. 10. That the city shall give six months notice in writing of their intention to purchase.

"*Depth of Main.* Sec. 11. That all mains shall have an average of at least thirty inches of covering, and all the mains to be so laid as not to interfere with the present sewerage and drainage of the city.

"*Test of Pumps.* Sec. 12. That the works shall be submitted to a test when completed, said test to consist of the pumping capacity of the pumps, and the throwing of fire streams, as provided in section three of this ordinance; and upon this test being made, the city shall be obliged to pay hydrant rental from the time of said test; and it is further provided, that the test shall be made within ten days after the city has been notified in writing by said Jones, or assigns, that the works are completed and ready for test.

"*Maximum Charges.* Sec. 13. That the following maximum rates shall be annual, and become a part of this franchise: *   *   *

"*Forfeiture of Franchise.* Sec. 14. That, in the event said grantee, or his assigns, shall suffer a suspension of the supply of water exceeding ten days, then and in that case the said grantee, or his assigns, shall forfeit all franchises, unless the said suspension shall be unavoidable.

"*Acceptance and Commencement of Work.* Sec. 15. That this ordinance shall be a contract by and between the city of Wichita and the said J. A. Jones, or assigns, and shall be binding upon all parties with equal force and effect: Provided, the said Jones, or assigns, shall file with the city clerk, in writing his acceptance of this ordinance within ten days after its legal passage, and commence work within thirty days after filing said acceptance, and furnish fire protection for Main street and Douglas avenue within four months thereafter, and have the works tested within six months thereafter.

"*City to Protect Company's Property.* Sec. 16. That the city council shall pass all necessary ordinances, with penalties, for the protection of the property of the said works.

"*Streets to be Left in Good Condition.* Sec. 17. It is further agreed that all streets, lanes and alleys shall be left in as good condition as practicable.

"*Rates to be Submitted to Council.* Sec. 18. That the said Jones, or his assigns, shall submit to the city council, for their approval, all rates not provided for in this ordinance.

"*Location of Mains.* Sec. 19. That the location of the mains provided for in section three is herewith submitted, marked 'Plan A,' and adopted, said pipes not to exceed eight miles.

"*To Take Effect.* Sec. 20. That all ordinances and parts of ordinances inconsistent with the provisions of this ordinance are hereby repealed, and this ordinance shall take effect and be in force from and after its publication once in the Wichita Beacon.

"Approved September 19, 1882.                    Wm. Greiffenstein, Mayor.

"Attest: A. A. Glenn, City Clerk pro tem.

"Accepted in writing, filed in city clerk's office September 29, 1882, by said J. A. Jones."

Second. A proposition submitted by the water company to the city December 18, 1908, making a reduction of 25 per cent. in the contract price of hydrant rentals to the city for the remainder of the contract period of 40 years, as stipulated in Ordinance No. 266, and also prescribing the rates to be paid by private consumers of water, and the manner of such use, which proposition was by resolution of the mayor and common council of the city duly accepted. This subsequent agreement, omitting the schedule of rates and meter rates thereby authorized to be charged consumers, provides as follows:

"Wichita, Kansas, Dec. 18, 1908.

"Honorable Mayor and Common Council, Wichita, Kansas—Gentlemen:

"We hereby submit for your approval the following schedules and changes in water rates and conditions, to be effective for water service for the balance of the contract period from January 1, 1909:

"A reduction of 25 per cent. in the hydrant rates as provided for in contract will be continued during the balance of the period, making the annual rental for the present 297 hydrants $11,887.50, instead of $15,850.

"The rental of each hydrant erected hereafter, when ordered in by the city in accordance with the contract, will be reduced 25 per cent., making each of such hydrants $37.50 per annum, instead of $50 as provided therein.

"Bills rendered to private consumers at the following schedules of 'Assessment Rates' and 'Meter Rates' will be subject to a discount of 10 per cent. if paid for on or before the 15th day of the month in which they are due at the company's office.  *   *   *

"Any consumer shall have the privilege of taking water service at meter rates, instead of assessed rates. The water company reserves the right to

charge for water service at meter rates, instead of assessed rates. For residence, the meter service shall be subject to a net monthly minimum amount of 75 cents for each ⅝-inch meter, and for business and other buildings a net monthly minimum of $1 for each ⅝-inch meter, and for larger meters a proportionate net minimum.

"Assessed rates are due and payable quarterly in advance; meter rates are due and payable on the 1st of each month for the previous month's use.

"Yours very truly, Wichita Water Company,
"Per G. E. Hoffmaster, President."

Thereafter, in September, 1915, the governing body of defendant city, conceiving itself to be not bound by the terms of the foregoing ordinance and subsequent agreement in regard to rates charged consumers of water, enacted various ordinances establishing other, different, and lower rates for service than were stipulated in the foregoing instruments; also providing punishments for those violating same by charging, collecting, or attempting to collect other or greater sums for service than permitted therein. Thereupon the water company instituted this suit to restrain the enforcement of the provisions of such ordinances.

The case stands argued and submitted for decision on the single question above stated, by stipulation of parties, which provides:

"Whereas, the plaintiff desires to present an application for a preliminary injunction in said cause, and have the same heard by the court in the above-entitled action in Kansas City, Kansas, on Friday, the 8th day of October, 1915, on the allegations of the plaintiff's bill alone that the ordinances set out therein are illegal, on the ground and for the reason that the same are violative of existing contract rights in force between the parties at the time said ordinances were passed, and now; and whereas, it is the desire of both parties the question of the reasonableness of the rates made by said ordinances shall not be discussed or considered by the court at the above mentioned time and place: It is therefore stipulated and agreed the same may be heard by the court at said time and said place solely upon the question as above stated, and no other question. This is done in the interest of saving expense to the parties litigant.

"It is further stipulated any other ordinance or ordinances which may be passed by the city of Wichita prior to the 8th day of October next may be considered at such hearing upon this stipulation, and that prior to said time and until the decision of said question by this court the said city of Wichita will refrain from attempting to enforce said ordinances, or any ordinances passed by the said city of Wichita prior to the 8th day of October, 1915.

"It is further stipulated, in the event the question to be presented, as above stated, shall be ruled in favor of the defendant city, then, in such event, the case may be brought on by the plaintiff on notice for temporary injunction on other grounds stated in the complaint."

In considering the matter there are certain propositions involved I shall assume to be conclusively settled and established:

[1] (1) The enactment of an ordinance such as the one above described, in so far as it relates to the procurement by the city of a supply of water for its own use, and the use of its inhabitants, and the price to be paid for the performance of such service, involves merely the exercise of the proprietary or business powers of the city, and not the exercise of its governmental functions. Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Wood v. Waterworks Co., 33 Kan. 590, 597, 7 Pac. 233, 238; Burlington Waterworks Co. v. City of Burlington, 43 Kan. 725,

728, 23 Pac. 1068, 1069; Manley v. Emlen, 46 Kan. 655, 27 Pac. 844; Columbus Waterworks Co. v. City of Columbus, 48 Kan. 99, 113, 28 Pac. 1097, 1102, 15 L. R. A. 354; Atlantic City Waterworks Co. v. Atlantic City, 48 N. J. Law, 378, 6 Atl. 24; Fergus Falls Water Co. v. City of Fergus Falls (C. C.) 65 Fed. 586, 591; Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913, 32 Am. St. Rep. 547; Walla Walla Water Co. v. City of Walla Walla (C. C.) 60 Fed. 957, 960; City of Indianapolis v. Indianapolis Gaslight & Coke Co., 66 Ind. 396, 407; City of Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 124, 125, 31 N. E. 573, 16 L. R. A. 485.

[2] (2) If the city possessed the power of private contract exercised by it in the passage of Ordinance No. 266, it must be found in statute law of the state conferring power for such purpose, either in express terms or by necessary implication.

[3] (3) If the power of private contract exercised in the passage of. Ordinance No. 266 be found conferred on the city by the laws of the state in force at the time it was made, then the acceptance of the terms proposed therein by the grantee, and the construction of the works, and the performance of other obligations imposed upon the grantee and his successors operated to place beyond the power of the city to change or modify the terms of the contract by subsequent legislation establishing rates during the contract period of 40 years.

[4] (4) If the city possessed the power to contract in relation to its private or domestic affairs, as set forth in Ordinance No. 266, and any defect be found in the manner in which the power conferred on the city was attempted by it to be exercised, then the subsequent agreement of December 18, 1908, must have been intended by the parties to constitute a complete adoption and ratification of the original contract, based upon a valuable consideration moving to the city at the time it was entered into.

[5] (5) If the city possessed no power emanating from the state to bind itself by the terms of the original contract when made, and in consequence Ordinance No. 266 was absolutely null and void for want of power when passed, then the subsequent agreement continuing its provisions in force during the remainder of the contract period is likewise invalid and void unless it be found the law-making power of the state by enactment subsequent to the passage of the ordinance expressly authorized the city to make the attempted ratification made by the subsequent agreement, for that which is void for want of power when done cannot be otherwise, ratified into a binding obligation.

[6] (6) As the question of the power of the city to bind itself by private contract in relation to its purely business or domestic affairs must depend upon the statutory law of the state in effect when the contract was entered into, as such statutory law was then construed by the settled rule of decision in the Supreme Court of the state, or, as since construed by federal court decisions controlling here, if such decisions be found, little will be gained by resort to decisions based upon the statute laws of other states as there construed.

On November 22, 1882, when Ordinance No. 266 was enacted, defendant city was a municipal corporation of this state of the second

class. The statute law of the state then in effect, by which power was conferred on a second-class city to provide itself and its inhabitants with a supply of water, reads as follows:

"Cities of the first, second and third class, of the state of Kansas, are hereby granted full power and authority, on behalf of such cities, respectively, to contract for and procure waterworks, to be constructed for the purpose of supplying the inhabitants of such cities with water for domestic use, the extinguishment of fires, and for manufacturing and other purposes." Gen. Stat. 1889, § 7185.

A glance discloses the language employed in this statute is quite broad and comprehensive in conferring power on cities of the class therein named. The power of cities of this state to bind themselves by contract for a supply of water extending over a period of years in pursuance of the above statute has often been upheld and has never been denied by the Supreme Court of this state, as will be seen by a reference to the adjudicated cases. Wood v. Waterworks Co., 33 Kan. 590, 7 Pac. 233; Burlington Waterworks Co. v. City of Burlington, 43 Kan. 725, 23 Pac. 1068; Manley v. Emlen, 46 Kan. 655, 27 Pac. 844; Columbus Waterworks Co. v. City of Columbus, 46 Kan. 666, 26 Pac. 1046; Columbus Waterworks Co. v. City of Columbus, 48 Kan. 99, 28 Pac. 1097, 15 L. R. A. 354.

The Circuit Court of Appeals for this circuit, in Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, Judge Sanborn delivering the opinion, on a review of the many decisions from the Supreme Court of the state, says in reference to the statute above quoted:

"In any event, the Legislature made this grant, and it thereby vested in the mayor and council of the city the right to make such contracts for such terms as, in their discretion, they thought proper. There is nothing in this record to show that the mayor and city council of Arkansas City either exceeded their authority or abused the discretion which the Legislature gave them when they fixed the term of the contract in this case at 21 years. Ample power was granted to cities of the second class of the state of Kansas by section 7185, Gen. St. Kan. 1889, to grant the right to the use of their streets to lay water pipes and to pay hydrant rentals for reasonable terms longer than the year during which their mayors and councilmen held their offices, and there is nothing in this record to show that 21 years was an unreasonable time for the term of such a contract. Wood v. Waterworks Co., 33 Kan. 590, 597, 7 Pac. 233, 238; Burlington Waterworks Co. v. City of Burlington, 43 Kan. 725, 728, 23 Pac. 1068, 1069; Manley v. Emlen, 46 Kan. 655, 27 Pac. 844; Columbus Waterworks Co. v. City of Columbus, 46 Kan. 666, 26 Pac. 1046; Columbus Waterworks Co. v. City of Columbus, 48 Kan. 99, 113, 28 Pac. 1097, 1102 [15 L. R. A. 354]; Atlantic City Waterworks Co. v. Atlantic City, 48 N. J. Law, 378, 6 Atl. 24; Fergus Falls Water Co. v. City of Fergus Falls [C. C.] 65 Fed. 586, 591; Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913 [32 Am. St. Rep. 547]; Walla Walla Water Co. v. City of Walla Walla [C. C.] 60 Fed. 957, 960; City of Indianapolis v. Indianapolis Gas Light & Coke Co., 66 Ind. 396, 407; City of Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 124, 125, 31 N. E. 573 [16 L. R. A. 485]."

It is true, in none of the foregoing cases did the contract extend over a period of such length as that involved in this case, 40 years. However, there is nothing in the act above quoted, even by intimation, restricting the length of the period for which the city might bind itself. The language employed therein, "full power and authority to

contract," in the absence of any intimation of fraud or collusion on the part of the city in the making of the contract, constitutes as ample warrant in law to contract for a period of 40 years as for a period of 25 years, for the duration of the contract, like the other terms on which it was made, was by the lawmaking power left to the good judgment and sound discretion of the officials of the city acting in its behalf, dependent upon the exigencies of the case, the benefits to be derived by the city in the making of the contract, and all the other influences tending to induce the making of the same. However, if it should be thought the statute above quoted conferred authority on the cities governed thereby, as was defendant city in this case, to make a binding contract for a supply of water for its municipal uses and for the use of its inhabitants for a period of 21 or 25 years, at fixed maximum rates of charge for the service to be performed, but did not confer authority on the city to bind itself by a like contract for a period of 40 years, as was attempted in this case, we are then confronted with this further fact:

On December 18, 1908, or some 26 years after the making of the original contract which the city had undoubted power under the statute above quoted to make for some fixed period of time, the subsequent agreement, for a valuable consideration moving to defendant city, was entered into, adopting and ratifying the rates charged private consumers and obligating the city to perform its terms and conditions so modified for the remainder of the contract period of about 14 years. And when but one-half of this period had expired the ordinances sought to be enjoined in this case were passed. To now hold, after the lapse of such a short period of time as had intervened since the subsequent ratification agreement was entered into, and the enactment of the ordinances of September, 1915, that the original contract was ultra vires and void, hence its formal subsequent ratification and adoption by the city was likewise void and of no effect, leaving the city to ordain such rates of charge as its governing body might deem proper, so long as the rates so adopted cannot be shown by the water company to be void because confiscatory of its property rights, and at a time when the city has in its possession and retains the fruits of the subsequent contract, shown by the record to amount to many thousands of dollars, would seem, to my mind, most inequitable and unjust.

I am therefore of the opinion the contract made by Ordinance No. 266, its acceptance by the grantee therein, and the construction, maintenance, and operation of the waterworks system thereunder by his successors, as modified by the subsequent agreement of December 18, 1908, constituted a valid and binding contract between the parties in the month of September, 1915, at the time the ordinances now sought to be restrained were passed by defendant city.

[7] This would seem to be the principal question of merit involved in the one controversy now submitted for decision under the stipulation of the parties above quoted. However, it appears from a reading of the brief and argument of defendant city to be thought, although the contract between the city and plaintiff as made by Ordinance No.

266 and the subsequent contract of December 18, 1908, should be upheld as valid and binding on the parties, yet the city under power conferred upon it since the making of the original contract, namely, by section 1031, Gen. Stat. 1909, and section 33, chapter 238, Laws 1911, possessed the authority to enact ordinances establishing rates to be charged for the performance of water service regardless of existing contract rights between the parties. In this regard, it may be said, there can be no doubt but that, in the absence of a binding contract between the parties authorizing the water company to establish, charge, and collect certain maximum rates for service performed under the contract, this contention of the city is undoubted. But the fallacy of this argument as applied to the present case appears when it is seen such subsequent legislation would operate to impair the binding force of the contract heretofore declared valid between the parties, for by section 13, Ordinance No. 266, it is provided as follows:

"That the following maximum rates shall be annual and become a part of this franchise."

And section 18 provides:

"That the said Jones, or his assigns, shall submit to the city council for their approval all rates not provided for in this ordinance."

From which it conclusively appears the parties to the contract knew and understood, at the time it was made, the maximum rates set forth therein were permanently settled during the life of the contract, and only those rates of charge for service not specified therein should be under the control of the officials of the city.

It follows, if the reliance of the defendant city in the enactment of the subsequent ordinances sought to be restrained in this suit be placed upon the legislative enactments referred to, it must fail, for such enactments are in contravention of the federal Constitution, because impairing the obligation of the contract existing between the parties.

It follows the temporary injunction sought by complainant must be, on the single ground here presented, sustained. An order to this effect will enter, on the giving by plaintiff of a bond in such penal sum and on such terms as may be prescribed by the court on application therefor.

It is so ordered.